Abraham N. (teller, J.
Plaintiffs, 13 former customers of First Discount Corporation, a securities factor not a party hereto and now in receivership (see SEC v. First Discount Corp. et al., 1961 Civ. Act. No. 1934 [U. S. Dist. Ct. S. D. N. Y.]), herein sue Reynolds & Co. (a stockbroker) and North Jersey Trust Company (a bank) for conversion of their securities by participating with, aiding and assisting First Discount Corporation in such conversion. Plaintiffs allege respective causes of action for conversion based on defendants’ actual knowledge that the sales of plaintiffs’ securities by First Discount Corporation were being made wrongfully in violation of plaintiffs’ rights and, alternatively, on defendants’ knowledge of such facts that their participation in the alleged conversion without inquiry amounted to bad faith.
Defendant Reynolds & Co. seeks dismissal of the complaint in whole or in part on various grounds, alleging legal insufficiency generally; a failure to allege facts sufficient to sustain the claim for punitive damages; that a certain allegation be made more definite and certain; and, in addition, specific attacks are made on various portions of the complaint pursuant to rule 103 of the Rules of Civil Practice.
The resolution of the principal issue of legal insufficiency of the complaint requires a review of the applicable rules of law in this field of claimed conversion of negotiable securities. Elements of negotiability are supplied under the Uniform Stock Transfer Act (Personal Property Law, § 162 et seq.) by delivery of a certificate of stock indorsed in blank (Turnbull v. Longacre Bank, 249 N. Y. 159). By the custom of banks, brokers and others dealing in stocks, possession of stock indorsed in blank is recognized as evidence of ownership or authority to sell “ in the absence of knowledge or cause of suspicion to the contrary ’ ’ (National Safe Deposit Co. v. Hibbs, 229 U. S. 391, 393-394).
In United States Fid. & Guaranty Co. v. Goetz (285 N. Y. 74, 78) it was held that, under the circumstances shown, “ The *86 question whether defendants had, at the time they offered the bonds for sale, actual or constructive notice that they had been stolen ’ ’, was one of fact for a jury to determine. The court pointed out that, while it could not be said as a matter of law that defendant brokers were chargeable with notice of the defect in title because of failure to use the standard of care prescribed for brokers dealing with a new account or because of the failure to observe that some of the serial numbers were unusually high, this evidence was ‘ ‘ such that a jury might find that defendants were put upon inquiry as to the nature of their principal’s possession of the bonds and that they were, therefore, chargeable with constructive notice of the theft. ’ ’
The holding in Gruntal v. United States Fid. & Guaranty Co. (254 N. Y. 468, 475) is to the same effect, the court stating that stockbrokers “ were not liable for conversion, when, in behalf of an apparently honest customer with whom they had had past dealings, and without any cause whatever for suspicion, they sold for his account negotiable corporate bonds payable to bearer.” (Emphasis added.) In Wagner Trading Co. v. Battery Park Nat. Bank (228 N. Y. 37, 45) the same principle was expressed as “ knowledge actual or imputed which amounts to bad faith.” Also, in Rochester & C. T. R. Co. v. Paviour (164 N. Y. 281), the court made reference to a failure to discharge a duty where trust was given “ without inquiry, under suspicious circumstances of a substantial character” (p. 285) and to failure to inquire where known facts should have led to inquiry and discovery of the real situation, characterized by the court as acting in bad faith “in a commercial sense” (p. 284).
In State Bank of Binghampton v. Bache (162 Misc. 128) the court applied these principles after a trial and found numerous factors, including the volume of transactions and the character of the securities, to require the conclusion that defendant’s manager had notice of facts putting him on inquiry, with consequent liability for bad faith.
We turn then to the allegations of this complaint. In the first group of the alternative causes of action based on actual knowledge, the following allegations are made. That plaintiffs pledged certain shares of stock with First Discount Corporation as collateral for loans, with delivery of the pledged certificates to defendant bank. That as part of a continuing course of conduct during the year 1959 and continuing to June, 1961, involving securities so pledged by many persons, defendants Reynolds and the bank, for a valuable consideration, aided and assisted First Discount Corporation in selling said pledged *87 securities through the bank’s institutional omnibus account maintained at Reynolds’ Ridgewood, New Jersey, branch. That such sale with the participation and assistance of defendants was effected without the knowledge or authority of plaintiffs 11 and without any justification on account of lack of margin or otherwise and in violation of [plaintiffs’] rights therein, said defendants having knowledge and notice that the said shares of stock and the certificates thereof, were the property of a customer of First Discount Corp. and were wrongfully being sold and delivered in violation of the said [customers’] rights therein. ’ ’
It would appear that it is intended to charge defendants with knowledge that there was no justification on account of lack of margin or otherwise for the sale of plaintiffs’ certificates of stock. Defendants are entitled to have that specifically stated or whatever the fact claimed as to the stock being “ wrongfully ” sold.
In the second group of the alternative causes of action based on imputed knowledge or constructive notice, the following allegations are made. That defendants had knowledge that First Discount Corporation was in the business of factoring transactions in securities with pledging of securities belonging to its customers for loans and which securities could not be sold except on account of lack of margin or other default. That with the aid and assistance of defendants First Discount Corporation was selling millions of shares of stock in less than two years, in a volume as high as 10,000 shares a day. That First Discount Corporation was making said sales without justification on account of any default. That defendants knew from certain stated circumstances that these were not clearance transactions but sales of pledged securities. That defendants, having such knowledge and information, failed in their duty to require First Discount Corporation to produce proof of its relationship to its customers and of its authority to sell their securities. That the proceeds of securities converted by First Discount Corporation have been dissipated, and First Discount Corporation is insolvent. That by reason of defendants’ negligence and without any negligence on plaintiffs’ part, plaintiffs’ stocks have been converted and lost to them.
Apart from the final allegation as to “ negligence,” this cause is sufficient as a pleading to charge defendants with liability on the ground that, under the stated special circumstances, they owed a duty to make inquiry and the failure to make such inquiry may be found at a trial, if supported by adequate evidence, to constitute bad faith. The proper standard is not *88 encompassed by the term, “negligence,” but, as indicated by the authorities, bad faith in failing to make inquiry under special circumstances constituting cause for suspicion.
In its present form, then, the complaint must be dismissed, with leave to serve an amended complaint.
With respect to the branch of the motion pursuant to rule 103 of the Rules of Civil Practice addressed to the allegations in the first group of cases as to the conversions having taken place in New Jersey, as to the applicable provisions of the law of New Jersey, and the claim for punitive damages under the law of New Jersey, it should be observed that motions to strike under rule 103 will be denied unless it clearly appears that they create prejudice or will tend to embarrass or delay the fair trial of the action (Vice v. Kinnear, 15 A D 2d 619). While it is not necessary that a claim for punitive damages be explicitly pleaded, the complaint must state facts from which a jury would be authorized to award punitive damages (Gill v. Montgomery Ward & Co., 284 App. Div. 36). The allegations here complained of are necessary for plaintiffs’ claim that, under New Jersey law, which they claim governs, they would be entitled to punitive damages. Defendants, of course, are not prevented thereby from claiming and establishing that New York law governs. Although that issue will be for determination at a later stage, the case cited by plaintiffs, Winkler v. Hartford Acc. & Ind. Co. (66 N. J. Super. 22, 168 A. 2d 418), appears at least arguably to support their view of New Jersey law.
With respect to paragraph 4 of the complaint, which states in alternative form that deliveries of stock were made to defendant bank, or in some cases, to First Discount Corporation, which, upon information and belief, then delivered the said certificates to defendant bank, the branch of the motion to make it definite and certain is granted. Since plaintiffs urge that the essential allegation is that defendant bank received custody of all of said certificates as agent for First Discount Corporation, the allegation should be recast to avoid alternative pleading, state what plaintiffs know to be the facts, and if they do not know, then to state the ultimate and essential fact.
With respect to the amounts claimed, plaintiffs have annexed schedules which indicate that they are claiming the full value of the stocks allegedly converted, without giving credit for the amounts of the loans for which they were pledged. Since the complaint does allege that such loans were made and since, in any event, defendants, who are not the pledgee, cannot be liable to plaintiffs in conversion except to the extent of plaintiffs’ *89 interest or equity in the 'stocks (1 Harper & James, The Law of Torts, 149), the schedules annexed should set forth the respective amounts of plaintiffs ’ interest or equity and the amount sued for should be correspondingly reduced.
The motion is accordingly granted, with leave to serve an amended complaint within 15 days after service of a copy of this order with notice of entry.