APS Food Systems, Inc., Respondent, v Ward Foods, Inc., et al., Appellants, et al., Defendant.

First Department, November 8, 1979

484

---

## APPEARANCES OF COUNSEL

*Richard I. Wolff* of counsel *(O'Sullivan Wolff Karabell & Graev,* attorneys), for International Foodservice Systems, Inc., and others, appellants.

*Stuart A. Summit* of counsel *(Joseph B. Pritti* with him on

the briefs; *Burns Jackson Miller Summit & Jacoby,* attorneys), for Ward Foods, Inc., appellant.

*Fred J. Halsey, Jr.,* for APS Food Systems, Inc., respondent.

## OPINION OF THE COURT

FEIN, J.

This is an action by a prospective buyer for breach of an alleged contract to sell it a controlling interest in Quality Col-Pak, Inc., a wholly owned subsidiary of defendant Ward Foods, Inc. In addition to the contract claim against Ward, plaintiff asserts a second cause of action for tortious interference with contractual relations against the ultimate buyer of the Quality stock (International Foodservice Systems, Inc.), International's president (Sanford), Ward's president Call (not a party to this appeal by reason of his recent demise), and one member of the boards of directors of both Ward and International (Dolkart). A third cause of action seeks punitive damages against all five defendants, and a fourth asserts unjust enrichment against all.

The four surviving defendants appeal from denial of their motion for summary judgment.

Defendants deny that there was a "definitive" agreement and further allege that even if it could be found that there was an agreement it would be unenforceable because (1) the parties intended that there should be no contract unless embodied in an executed writing, and (2) enforcement of such agreement would be barred by the Statute of Frauds (Uniform Commercial Code, § 8-319). It is undisputed that although lengthy negotiations took place, no purchase agreement between plaintiff and Ward was ever formalized in a signed contract. Plaintiff contends that a series of signed and unsigned writings, taken together with alleged part performance, are sufficient to overcome these defenses. The lengthy negotiations included detailed correspondence between the parties, and at one point reached the level of a comprehensive written draft of the proposed contract. On August 16, 1971 Call wrote to plaintiff's president (Peltz), bringing up a possible solution to a particular sticking point in the negotiations then under way. The proposed solution involved a stock transfer, setting forth specific figures for stock and cash. If the problem could not be resolved in accordance with Call's proposal, then he suggested that "we return to the deal as set up Saturday."

■ Assuming that this transaction, which contemplated the transfer of all of the stock of Quality Col-Pak, constituted a contract for the sale of securities, within the purview of the statute, it might not require a formally executed contract if there exists "some writing signed by the party against whom enforcement is sought" which is "sufficient to indicate that a contract has been made for sale of a stated quantity of described securities at a defined or stated price" (Uniform Commercial Code, § 8-319).

■ While the Call letter referred only to one aspect of a rather lengthy and complex contract in negotiation, it was not the only written evidence of a contract. Where a formal written contract is not executed, enforcement will be denied if it is found that it was the intention of the parties that only an executed writing would bind (*Brause v Goldman*, 9 NY2d 620). If no such intention is found, the question is whether there are collateral writings sufficient to satisfy the Statute of Frauds (*Scheck v Francis*, 26 NY2d 466). Compliance with that statute may be found if an agreement can be "pieced together out of separate writings", not all of which need be signed, provided they clearly refer to the same transaction, include all the items of the contract, and at least one of them bears the signature of the party to be charged "with intent to authenticate the information contained therein and that such information does evidence the terms of the contract" (*Crabtree v Elizabeth Arden Sales Corp.*, 305 NY 48, 54). Among the writings upon which plaintiff relies in addition to the Call letter, are the following:

An undated memorandum by Joseph Roby (not otherwise identified), discussing consideration for the deal, makeup and powers of the future board of directors, seller's retention of rights and employment agreements for the corporate officers;

Ward's press release to the Dow Jones teletype service on September 21, 1971 concerning its impending sale of Quality to plaintiff, which was repeated as a news item in the *Wall Street Journal* and the trade publication *Modern Grocer;*

A letter to Peltz from Ward's vice-president in charge of purchasing (Hogerty), dated October 8, 1971, concerning an upcoming meeting on October 18* to plan future economizing in areas of purchasing common to Ward and plaintiff;

---

* Hogerty never showed up for this meeting, and the following day Ward announced its sale of Quality to International.

An October 9, 1971 memorandum from a Ward official to plaintiff, indicating apparent agreement on the terms of documentary components of the draft agreement;

The 65-page final draft of the unexecuted stock purchase agreement, with exhibits, dated October 11, 1971; and

A 9-page confidential memorandum prepared by Ward for its lending institutions on or about October 12, 1971, outlining the financial background and mechanics of, and the prognosis for, the already announced "agree[ment] in principle to merge Ward's subsidiary Quality Col-Pak, Inc. (QCP) into APS."

In addition to these writings, plaintiff relies on mutual part performance in the nature of an exchange between plaintiff and Ward of APS and Quality confidential trade information relating to identification of accounts, purchase orders, inventory product evaluation, price lists and employee insurance data. This exchange would appear to be unequivocally referable to the impending, albeit unexecuted, transaction (cf. *Burnside & Co. v Havener Securities Corp.,* 25 AD2d 373).

At this juncture summary judgment would be premature. In the light of this evidence of a contract and Peltz' deposition testimony as to the intention of the parties, plaintiff is entitled to proceed with disclosure procedures to determine whether there was an enforceable agreement between plaintiff and Ward. In so ruling we do not now decide that these items established a contract. There are manifestly questions as to the intention of the parties, the authority of the persons signing the writings, the sufficiency of their contents and whether other writings exist. We hold only that there is insufficient cause at this point, prior to completion of pretrial discovery, to justify summary dismissal based on the Statute of Frauds *(Bingham v Wells, Rich, Greene,* 34 AD2d 924, 925), or on the ground that it has been established that the parties intended that only an executed writing would suffice.

As to the second cause of action (inducement to breach), the two surviving individual defendants, Sanford (the ultimate buyer's president) and Dolkart (member of the boards of directors of both the seller and the ultimate buyer), had inside knowledge of the ongoing negotiations for sale to plaintiff. Their liability, if any, may well turn, in part, on whether plaintiff can establish the existence of an enforceable agreement between plaintiff and Ward. Neither of these key witnesses has yet been examined. Summary dismissal of this cause at this point would be premature.

■ The fourth cause of action alleges unjust enrichment of Quality (the object of the purchase/merger), Ward (Quality's parent), International (the ultimate buyer, which was a competitor of plaintiff) and the corporate officers by reason of their acquisition of "materials and trained personnel" from plaintiff in contemplation of consummation of the deal between plaintiff and Ward. Defendants respond that plaintiff voluntarily divulged this data to Quality pursuant to an agreement that it be returned should the deal fall through. Plaintiff does not dispute the fact that following the termination of negotiations between the parties, plaintiff made no attempt to obtain the return of this supposedly confidential data. Quality is not a defendant. There is not even a minimal showing that any of the defendants was unjustly enriched by the furnishing of such information to Quality. No cause of action is stated.

■ The third cause of action for punitive damages cannot stand as a separate cause of action since it constitutes merely an element of the single total claim for damages on the underlying causes of action. (*Goldberg v New York Times,* 66 AD2d 718; *Ferrucci v State of New York,* 42 AD2d 359, 362, affd 34 NY2d 881; *Kallman v Wolf Corp.,* 25 AD2d 506.)

Accordingly the order, Supreme Court, New York County (KLEIN, J.), entered on March 27, 1978, denying defendants' motion for summary judgment dismissing the complaint, should be modified on the law, without costs, to the extent of dismissing the third and fourth causes of action, and as so modified, affirmed.

KUPFERMAN, J. P., SANDLER and SULLIVAN, JJ., concur.

Order, Supreme Court, New York County, entered on March 27, 1978, modified, on the law, to the extent of dismissing the third and fourth causes of action, and as so modified, affirmed, without costs and without disbursements.