OPINION OF THE COURT
Simons, J.
The issue presented by this appeal is whether plaintiffs action for breach of contract is barred by Insurance Law §2119 (a) (1) — a specialized Statute of Frauds applicable to contracts for insurance consulting services. Applying that statute, Supreme Court denied defendants’ motion for summary judgment dismissing plaintiffs causes of action sounding both in breach of contract and quantum meruit. The Appellate Division modified by dismissing the quantum meruit claim, but permitted the breach of contract cause of action to proceed to trial, holding that plaintiff could "piece together” certain signed and unsigned writings prepared by defendants to satisfy the writing requirements of section 2119 (a) (1). After trial, plaintiff obtained judgment on a jury verdict in the principal amount of $81,796. Defendants are here by our leave. Their appeal from the final judgment brings up for review the prior nonfinal order of the Appellate Division (CPLR 5602 [a] [1] [ii]).
I
Plaintiff, Henry L. Fox Co., Inc., is a licensed New York State insurance agent, broker and consultant. On September 14, 1981, it sent a letter to defendant, William Kaufman Organization, Ltd., a corporation with substantial New York City real estate holdings, and its principals, proposing to perform consulting work by reviewing its existing insurance portfolio in an effort to reduce “insurance costs.* The letter concluded:
"Our total remuneration places you [defendants] in a 'can’t lose’ situation as follows:
*139 "1. A first year fee being 50% of the net premium savings based upon your current property/casualty coverages only.; reducing to 25% for all subsequent years.
"2. The above fee is paid for only the period of time in which the bidding sources are used; giving management the continuous option of terminating this fee arrangement, by simply cancelling or not renewing these market sources.”
Defendant did not respond to this letter in writing, although the proposal was circulated internally among defendant’s principals, in September and October 1982, as an attachment to two unsigned interoffice memoranda indicating that it should be "discussed.” In February 1982, plaintiff sent defendant another letter setting forth a schedule of its current insurance coverage and a list of building superintendents to be contacted for inspection purposes. In March, plaintiff requested that defendant prepare a letter authorizing plaintiff to obtain inspection reports from certain insurance companies.
Defendant responded by letter, dated March 5, 1982, and provided a copy of an authorization letter permitting plaintiff to obtain inspection reports. The authorization letter and accompanying cover letter are the only two writings signed by defendant relating to plaintiff’s request to perform insurance consulting work. Neither refers to plaintiff’s September 14th proposal. Subsequently, in March and April 1982 plaintiff sent defendant various insurance policies, reflecting bids it had obtained, allegedly in response to defendant’s request, but defendant subsequently purchased its insurance through another broker.
In 1983, after defendant refused to compensate plaintiff for the services rendered, plaintiff commenced this action seeking recovery for breach of contract and quantum meruit. After joinder of issue, defendants moved for summary judgment contending that the action was barred by Insurance Law § 2119 (a) (1) which requires that one seeking to recover for insurance consulting work must provide a memorandum signed by the party to be charged "specifying or clearly defining the amount or extent of * * * compensation.” Supreme Court and the Appellate Division both rejected defendants’ argument, holding that general Statute of Frauds principles were applicable and that the signed and unsigned writings prepared by defendant could be pieced together to satisfy the writing requirement of the statute. We reverse and dismiss the complaint.
*140 II
In the absence of agreement, an insurance broker’s compensation traditionally has been limited to the commissions deductible from premiums paid by the insured upon the purchase of insurance. To protect insureds from unsubstantiated demands for compensation, the Legislature has for the past 50 years required that agreements for additional compensation from a client for consulting services be in writing (L 1939, ch 882, § 129). In 1972, the statutory requirements were extended to licensees other than brokers, specificálly agents and consultants, as part of a comprehensive consumer protection measure to license and regulate insurance consulting practices (Insurance Law former § 112-a [7], L 1972, ch 498, § 1). The statute was subsequently recodified and presently provides: "No person licensed as an insurance agent, broker or consultant may receive any fee, commission or thing of value for examining, appraising, reviewing or evaluating any insurance policy, bond, annuity or pension or profit-sharing contract, plan or program or for making recommendations or giving advice with regard to any of the above, unless such compensation is based upon a written memorandum signed by the party to be charged and specifying or clearly defining the amount or extent of such compensation” (Insurance Law § 2119 [a] [1]).
Plaintiff maintains that this provision is to be construed like other "more familiar” Statutes of Frauds and that it has satisfied the statute’s requirements by "piecing together” the contents of several writings of the parties (see, Crabtree v Elizabeth Arden Sales Corp., 305 NY 48).
The purpose of Statutes of Frauds is to avoid fraud by preventing the enforcement of contracts that were never in fact made. Generally the statute is satisfied by some note or memorandum signed by the party to be charged that is adequate to establish an agreement when considered in light of the admitted facts and surrounding circumstances. Given proof of agreement by such evidence, its particular terms may be furnished by piecing together other, related writings (Crab-tree v Elizabeth Arden Sales Corp., 305 NY 48, supra). The writings are not the agreement, of course, only evidence of the agreement. They are required so that there is no serious possibility that the assertion of the contract is false.
New York has enacted several Statutes of Frauds, each with its own particular language and requirements (plaintiff cites as examples General Obligations Law § 5-701 [formerly Per *141 sonal Property Law § 31], § 15-501 [2]; Uniform Commercial Code §§ 2-201, 8-319). General Obligations Law § 5-701, for example, provides in general terms that certain enumerated agreements are void unless "some note or memorandum thereof be in writing, and subscribed by the party to be charged therewith”. Under this provision, the writings must contain all the essential terms of the purported agreement. To contrast, the Statute of Frauds applicable to the sale of goods provides that the agreement is binding even if the writing omits or incorrectly states a term of the agreement. Even the price need not be specified (Uniform Commercial Code § 2-201). It is sufficient that the writing affords a basis for believing the offered oral evidence rests on a real transaction (Uniform Commercial Code § 2-201, comment 1). If it does, the finder of fact may set a reasonable price (id.; cf., Uniform Commercial Code § 8-319 [price and quantity of securities sold must be specified]). Thus, the statutes may require more or less particularity in the writings depending upon the Legislature’s perception regarding the risks of false claims inherent in the contractual setting.
Plaintiff contends that Insurance Law § 2119 (a) (1), like General Obligations Law § 5-701, requires that it prove a written document signed by the party to be charged establishing the existence of a contractual relationship and if it does then both signed and unsigned writings referrable to the signed writing may be considered to establish the complete terms of the contract (see, Crabtree v Elizabeth Arden Sales Corp., supra).
The Insurance Law sets forth a more exacting standard, however. It focuses on the amount of compensation, requiring the parties to agree on a clearly defined price, with their agreement being evidenced in a writing signed by the party to be charged.
As explained in the legislative history, insurance licensees often provide consulting services with the sole expectation that as a result of their successful efforts in achieving premium reductions, their clients will use them to purchase insurance coverage from the insurance carriers. Consequently, absent an express contract proving otherwise, it is reasonable for prospective insureds to contemplate that the insurance licensees are providing consulting services for no separate compensation beyond the commission they would receive on the sale (see, Mem of New York Ins Dept, re: An Act to *142 Amend, the Insurance Law, in Relation to Written Contract for Compensation to an Insurance Broker by Insured, 1952 McKinney’s Session Laws of NY, at 1229). Where additional compensation is expected by licensees, they must secure a signed writing agreeing to the terms and conditions of this special arrangement from the insured, and retain a copy for three years (see, Insurance Law § 2119 [a] [2]). Thus, the various terms of the agreement may be found in separate writings but there must be one document, signed by the party to be charged, that specifies the compensation either explicitly or by reference to another identified document which sets forth the terms of compensation.
The legislative purpose underlying this requirement is exemplified in this case by the significant inconsistency between the compensation formula contained in plaintiffs verified complaint and the compensation arrangement plaintiff relied upon in response to the motion for summary judgment. In the verified complaint (and also in response to a separate motion made by defendants to dismiss for failure to state a cause of action), plaintiff asserted that the amount of compensation to be paid was "to be equal to the amount of the first year’s saving enjoyed by defendants”. When defendants moved for summary judgment, plaintiff changed its theory, attaching to its opposition affidavits a copy of its September 14th proposal and arguing that the letter established plaintiff’s compensation as 50% of the net premium savings for the first year and 25% for subsequent years. Manifestly, defendant was free to terminate the alleged agreement after one year, however, and the compensation claimed was not the same under both formulations. Section 2119 (a) (1) was enacted to avoid just such uncertainties.
The reliance of plaintiff and the Appellate Division on our decision in Crabtree v Elizabeth Arden Sales Corp. (305 NY 48, supra) is misplaced. In Crabtree, we reaffirmed the principle that the writing requirement of the Statute of Frauds " 'may be pieced together out of separate writings, connected with one another either expressly or by the internal evidence of subject matter and occasion’ ” (id., at 54, quoting Marks v Cowdin, 226 NY 138, 145). We held it necessary that one writing, the one establishing a contractual relationship between the parties, bear the signature of the party to be charged and that the signed and unsigned writings clearly refer to the same subject matter or transaction. Parol evi *143 dence is admissible only to connect the papers, not to establish missing terms of the agreement (Crabtree v Elizabeth Arden Sales Corp., supra, at 55-56). In Crabtree, there was no question that a writing signed by employees of the defendant corporation established the existence of a contractual employment relationship with the plaintiff; the only question was the duration of that relationship and this element was supplied by the unsigned memorandum prepared by Elizabeth Arden’s personal secretary which indicated that a two-year agreement had been reached.
In the present case, it is plain that plaintiff cannot satisfy the requirements of section 2119 by piecing together multiple writings because there is no writing signed by defendants "specifying or clearly defining” the amount to be paid or referring to a document doing so. Indeed, there is no writing or collection of writings establishing that defendants agreed to hire plaintiff for the consulting work. Of the four writings prepared by defendants, only two are signed and none refer to the amount or extent of compensation payable to plaintiff for the insurance consulting work. The only document relating to compensation is plaintiff’s letter of September 14, 1981. The two unsigned interoffice memoranda prepared by defendant make reference to the letter but state only that the proposal should be "discussed” by the corporate officers. The signed building inspection authorization letter and cover letter which defendant sent to plaintiff do not refer to the September 14th proposal or in any way mention that plaintiff was to be compensated by defendant for its efforts. The writings signed by defendant do no more than authorize plaintiff to make arrangements to have buildings inspected.
The gaps in these documents cannot be filled by parol evidence. The writings are insufficient on their face, and the conclusion follows, as a matter of law, that they do not satisfy the Statute of Frauds (see, Bazak Intl. Corp. v Mast Indus., 73 NY2d 113, 118; Scheck v Francis, 26 NY2d 466, 472).
Accordingly, the judgment appealed from and order of the Appellate Division brought up for review should be reversed, with costs, and the complaint dismissed.
Judges Kaye, Alexander, Titone, Hancock, Jr., and Bellacosa concur; Chief Judge Wachtler taking no part.
Judgment appealed from and order of the Appellate Division brought up for review reversed, etc.

 Both the corporation and Melvyn and Robert Kaufman, its principal stockholders, were named defendants. "Defendant” refers to the corporation.