Marilyn A. DICKERSON, Plaintiff,

v.

Robert KAPLAN, Individually and as General Partner of R.K. Associates and Alandco Development & Construction Corporation, Defendants.

No. 90 CV 228 (ERK).

United States District Court, E.D. New York.

Aug. 2, 1990.

Joel Ziegler, Greshin, Ziegler & Pruzansky, Smithtown, N.Y., for plaintiff.

Thomas Murray, Berman & Murray, New York City, for defendants.

## MEMORANDUM AND ORDER

KORMAN, District Judge.

Plaintiff alleges that she was induced by defendants to leave her employment in Ohio and relocate to New Jersey to accept the position of "General Manager and Chief Marketing Person" of defendants' retirement community. She began work in December 1988 and was discharged on July 13, 1989 "without warning or notice." She then commenced this action for breach of her employment contract, intentional infliction of emotional distress, fraud and wrongful discharge. She relies upon an unsigned employment contract and four signed letters as evidence of an employment contract that was for an eleven-year term and terminable "for cause." Defendants move to dismiss the complaint pursu-

ant to Fed.R.Civ.P. 12(b)(6) on the grounds that the breach of contract claim is barred by the Statute of Frauds, that the tort claims are incidental to the breach of contract claim, that plaintiff has failed to state a claim against Robert Kaplan and R.K. Associates and that plaintiff has not sufficiently stated a basis for the exercise of subject matter jurisdiction.

## (I)

Defendants move to dismiss plaintiff's breach of contract claim as barred by the Statute of Frauds because, "[b]y its terms, [the contract was] not to be performed within one year from the making thereof" and "it or some note or memorandum thereof [is not] in writing, and subscribed by the party to be charged therewith, or by his lawful agent." N.Y.Gen. Oblig.Law § 5–701(a)(1) (McKinney 1989). A motion to dismiss is inappropriate where, as here, the plaintiff has stated a claim for breach of contract, the defendants have asserted the Statute of Frauds as an affirmative defense and both parties have submitted evidence in support of their claim or defense. *See* Fed.R.Civ.P. 12(b). Rather, the appropriate motion is one for summary judgment pursuant to Fed.R. Civ.P. 56 and defendant's motion is treated as such, *id.*, and denied for the following reasons.

Under New York law, the Statute of Frauds may be satisfied by a combination of signed and unsigned writings, "provided that they clearly refer to the same subject matter or transaction." [1] *Crabtree v. Elizabeth Arden Sales Corp.*, 305 N.Y. 48, 55, 110 N.E.2d 551 (1953) (citations omitted). The Court of Appeals for the Second Circuit has held that the rule announced in *Crabtree* "contains two strict threshold requirements:"

First, the signed writing must itself establish "a contractual relationship between the parties." [*Crabtree*, 305 N.Y.] at 56, 110 N.E.2d at 554. *See O'Keeffe v. Bry*, 456 F.Supp. 822, 829 (S.D.N.Y.1978) ("To the extent that *Crabtree* permits the use of a 'confluence of memorandum,' the minimum condition for such use is the existence of one [signed] document establishing the basic, underlying contractual commitment."). Second, the unsigned writing must "on its face refer to the same transaction as that set forth in the one that was signed." *Crabtree*, 305 N.Y. at 56, 110 N.E.2d at 554.

*Horn & Hardart Co. v. Pillsbury Co.*, 888 F.2d 8, 11 (2nd Cir.1989). The documents themselves must evidence a connection between the signed and unsigned writings:

Compliance with these threshold requirements may be decided by the district court as a matter of law, and must be considered without the introduction of parol evidence. "Parol evidence ... is immaterial to the threshold issue whether the documents are sufficient on their face to satisfy the Statute of Frauds...."

*Horn & Hardart Co. v. Pillsbury Co.*, 888 F.2d at 11 (quoting *Bazak Int'l Corp. v. Mast Indus., Inc.*, 73 N.Y.2d 113, 118, 538 N.Y.S.2d 503, 535 N.E.2d 633 (1989)). Once this threshold issue is met, by demonstrating that the papers sufficiently refer to "the same subject matter or transaction[,] ... oral testimony is admitted to show the connection between the documents and to establish the acquiescence of the party to be charged, to the contents of the one unsigned." *Crabtree v. Elizabeth Arden Sales Corp.*, 305 N.Y. at 55, 110 N.E.2d 551; *see H.L. Fox Co. v. William Kaufman Organization*, 74 N.Y.2d 136, 142–43, 544 N.Y.S.2d 565, 542 N.E.2d 1082 (1989) ("Parol evidence is admissible ... to connect the papers....") (citing *Crabtree v.*

---

**1.** Defendants argue that "the laws of New Jersey are appointed by conflicts' rules as controlling" and plaintiff "notes" that the unsigned employment contract provides that New York law controls its "validity, interpretation, and performance." The parties do not suggest, however, that there is any conflict of law to be resolved here. Indeed, they concede that the applicable rules of law of New York and New Jersey are in harmony. Under these circumstances, in order to avoid duplicative research and discussion, the law of the forum will be applied. *Cf.* E. Scoles & P. Hay, *Conflict of Laws* 414 (1982); B. Currie, *On the Displacement of the Law of the Forum*, 58 Colum.L.Rev. 964, 969, 1027 (1958).

*Elizabeth Arden Sales Corp.*, 305 N.Y. at 55–56, 110 N.E.2d 551).

■ In the instant case, plaintiff relies upon four signed letters, one of which was enclosed with the unsigned employment contract, as evidence of an agreement with defendants to employ her for an eleven-year term. Only two of these letters require extended discussion.[2]

The first letter, dated June 1, 1988, is addressed to plaintiff in Ohio and signed by Robert Kaplan. It provides in relevant part:

> After thinking about a proposal to you, I would like to offer the following:
>
> 1) Employee/Employer Contract, which I will have Linda [Kaplan] prepare.
>
> 2) Major Medical.
>
> 3) We will pay for your relocation expenses.
>
> 4) Base salary of $60,000.00 per annum.
>
> 5) For every private resident who stays a minimum of four months, you will receive a one time bonus of $200.00.
>
> 6) For every semi-private resident who stays a minimum of four months, you will receive a one time bonus of $150.00.
>
> 7) We will, in the future, determine a base rate for private and semi-private residences. For everything over the base rate that you secure from each resident, we will share 50% of the increase for the first month only.
>
> 8) If you take in more than twenty (20) people per month, there will be a one time only extra $50.00 bonus per person.

Let me have your view points (sic) on this proposal, and if you find it satisfactory, we will have Linda [Kaplan] prepare a contract, which will commence sometime in the fall.

Affidavit of Marilyn Dickerson at Exhibit C. This letter contains an express offer of employment at a yearly salary of $60,-000.00 and is signed by the party to be charged. It also contains an offer to provide plaintiff with major medical insurance, to reimburse her for relocation expenses and to pay her a commission based on sales made.

The June 1st letter alone, however, fails to meet the requirements of the Statute of Frauds. While it contains a written offer of employment and is signed by the party to be charged, it does not establish that the parties had reached an agreement. Indeed, it does not contain all of the terms of the contract to which plaintiff alleges the parties had agreed and it contemplates the additional negotiation of one of its terms. *See Stulsaft v. Mercer Tube and Mfg. Co.*, 288 N.Y. 255, 258–59, 43 N.E.2d 31 (1942); *Read v. Henzel*, 67 A.D.2d 186, 188–89, 415 N.Y.S.2d 520 (4th Dep't 1979); 56 N.Y.Jur. *Statute of Frauds* § 165 (1967). Specifically, it does not include a commencement date for plaintiff's employment and, more significantly, is silent regarding the duration of her employment. Moreover, the letter states that "a base rate for private and semi-private residences" will be determined "in the future" and that a contract will be prepared once plaintiff has communicated her satisfaction with the proposed terms. Thus, it is necessary to consult additional memoranda, which refer on their face to the transaction addressed by the June 1st letter, to evidence the missing or incomplete terms and the parties' agreement to them.

The additional memoranda in the record consist of a letter dated November 2, 1988 and the unsigned employment agreement

---

**2.** The first of the four letters, dated August 25, 1987, was written more than sixteen months before plaintiff allegedly began working for defendants and discusses the position of "temporary administrator of the Westbury Home for Adults." Affidavit of Marilyn Dickerson, March 30, 1990, at Exhibit B. The last letter, dated March 28, 1989, was written while plaintiff was employed by defendants and offers plaintiff additional commissions and vacation time. *Id.* at Exhibit E. Neither the August 25th letter nor the March 28th letter constitutes "a core document evidencing a promise was present." *O'Keeffe v. Bry*, 456 F.Supp. 822, 829 (S.D.N.Y. 1978). Furthermore, the August 25th letter does not constitute an additional document that refers "on [its] face to the transaction covered by the core document." *Id.* at 829.

that was sent with it. The letter states: "Enclosed please find the Agreement. Please review same." Affidavit of Marilyn Dickerson at Exhibit D. It is on "R.K. Associates" stationery, addressed to plaintiff in Ohio and signed by Linda Kaplan. The enclosed agreement provides that plaintiff will receive a yearly salary of $60,-000.00, that plaintiff will receive a one-time bonus of $200.00 for each sale she makes, that defendants would reimburse plaintiff for her relocation expenses, and that defendants would provide plaintiff with major medical insurance. It also provides that "[s]ubject to the provisions for termination, the term of this Agreement shall commence _____, 1989 and shall continue until December 31, 1999," and that "[a]t any time the Employer may terminate this Agreement upon five (5) days written notice with the Employee for cause." Notice of Motion, March 21, 1990, at Exhibit A.

Although "the Agreement" was not signed by defendants, it was authenticated by the cover letter accompanying it and, consequently, "became a part of that letter." *Ford Motor Co. v. Hotel Woodward Co.*, 271 F. 625, 628–29 (2nd Cir.1921).[3] When combined with the June 1st letter, it evidences all of the essential terms of the employment contract alleged by plaintiff, including the identity of the parties (Marilyn Dickerson and Alandco), the commencement date (1989), the duration of the contract (eleven years), the condition of employment (terminable "for cause") and plaintiff's salary ($60,000.00 yearly plus commissions).[4] Because these memoranda are "connected with one another either expressly or by the internal evidence of subject matter or occasion," *Marks v. Cowdin,*

226 N.Y. 138 at 145, 123 N.E. 139 (1919), the combination of them satisfies the writing requirement of the Statute of Frauds.

The fact that "the Agreement" does not specify the day on which plaintiff would begin working for defendants (it states that plaintiff's employment "shall commence _____, 1989") does not render the memoranda incomplete. The New York Court of Appeals has held:

A complete agreement is not void under the Statute of Frauds, though the writing which is intended to satisfy the statute sets forth only the promises upon which there has been discussion and express agreement, provided the writing itself when read with reference to the relations of the parties and the surrounding circumstances known to both, sufficiently identifies also the other terms and conditions where agreement was tacit.

*Stulsaft v. Mercer Tube & Mfg. Co.,* 288 N.Y. at 259, 43 N.E.2d 31; *see N.E.D. Holding Co. v. McKinley,* 246 N.Y. 40, 45, 157 N.E. 923 (1927) (Cardozo, Ch.J.); 56 N.Y.Jur. *Statute of Frauds* at § 197. Here, as the letter of June 1, 1988 stated, plaintiff was expected to begin working for defendants "sometime in the fall" if she approved of the terms proposed by Robert Kaplan. In November 1988, defendants sent plaintiff "the Agreement," which contained the proposed terms, suggested that it was to be executed before the end of the year[5] and provided for an unspecified starting day in 1989. In a letter dated March 28, 1989, Robert Kaplan acknowledged that plaintiff began working for defendants in January 1989, which was *after* she had received "the Agreement."[6]

---

**3.** Although both the June 1st and November 2nd letters, "were not prepared or signed with the intention of evidencing the contract ... they were signed with intent to authenticate the information contained therein and such information does evidence the terms of the contract." *Crabtree v. Elizabeth Arden Sales Corp.,* 305 N.Y. at 53–54, 110 N.E.2d 551.

**4.** The essential elements of an effective and valid employment contract are "the identity of the parties, the terms of employment, which include the commencement date, the duration of the contract and the salary." *Merschrod v. Cornell*

*Univ.,* 139 A.D.2d 802, 805, 527 N.Y.S.2d 109 (3rd Dep't 1988).

**5.** The unsigned contract begins with the statement "Agreement made this ____ day of _____, 1988" and ends with the statement "the parties have executed this Agreement on this day of _____, 1988."

**6.** Robert Kaplan wrote plaintiff that: "I will give you two weeks vacation on your anniversary date (January 1990) instead of the customary one week's vacation which I give to all other employees." Affidavit of Marilyn Dickerson at Exhibit E.

These memoranda and the surrounding circumstances indicate that the parties had tacitly, if not expressly, agreed upon the day that plaintiff would commence employment.

The instant case is distinguishable from *Scheck v. Francis,* 26 N.Y.2d 466, 311 N.Y.S.2d 841, 260 N.E.2d 493 (1970), in which the New York Court of Appeals held that the memorandum relied upon by the plaintiff was insufficient to satisfy the Statute of Frauds because it demonstrated, as a matter of law, that the parties did not intend to be bound until they executed a formal agreement. The plaintiff in *Scheck* was sent a letter by Mr. Levin, the defendant's attorney, in which four copies of an unsigned employment contract were enclosed. The letter instructed the plaintiff to "sign all copies, have [the defendant] sign all copies and distribute the copies" and to call Mr. Levin if he had "any questions or comments." *Id.* at 469 n. 1, 311 N.Y.S.2d 841, 260 N.E.2d 493. The agreements were never signed by the defendant and there was no other evidence of a contract between the parties. On this basis, the Court of Appeals held that "[t]he writings ... evidence the intention of the parties not to be bound until the agreements were signed" because "[i]t appears quite clear, from Mr. Levin's letter alone, that the agreements were to take effect only after both parties had signed them." *Id.* at 470, 311 N.Y.S.2d 841, 260 N.E.2d 493.

In contrast, the cover letter here neither "call[s] for" the signature of defendants, *id.* at 469, 311 N.Y.S.2d 841, 260 N.E.2d 493, nor invites further negotiation of the terms of the enclosed agreement.[7] Moreover, plaintiff does not rely solely upon the November 2nd letter, which enclosed "the Agreement," as evidence of her contract with defendants. Rather, she also relies upon the June 1st letter that is signed by Robert Kaplan, in which he offers her employment at a $60,000.00 yearly salary plus commissions, major medical insurance and reimbursement for relocation expenses and advises her that, if she accepts these terms, Linda Kaplan would "prepare a contract." The fact that Linda Kaplan drew up and sent plaintiff an agreement which contained nearly all of the terms proposed in the June 1st letter, and that she did so after plaintiff had received the June 1st letter and had the opportunity to communicate her assent to its terms, suffices, at least at this preliminary stage, to establish that the parties had orally agreed to these terms. *See R.G. Group, Inc. v. Horn & Hardart Co.,* 751 F.2d 69, 74 (2nd Cir. 1984); *Municipal Consultants & Publishers, Inc. v. Town of Ramapo,* 47 N.Y.2d 144, 148–49, 417 N.Y.S.2d 218, 390 N.E.2d 1143 (1979). Under these circumstances, unlike *Scheck,* the November 2nd cover letter reasonably may be read as stating that "enclosed is the contract to which we have agreed" and as having been signed with the intent " 'to authenticate the terms of [the parties'] agreement as set forth in the enclosed unsigned documents.' " *Scheck v. Francis,* 26 N.Y.2d at 471, 311 N.Y.S.2d 841, 260 N.E.2d 493 (citation omitted).

It must be emphasized that the only issue to be resolved at this point is whether the memoranda are facially sufficient to evidence the fact that the parties entered into a binding agreement. As Judge Cardozo concluded in analogous circumstances:

> We do not say as a matter of law that the note or memorandum states the whole agreement of the parties. We do not say that it does not. Since the writing is not the contract, but only a note or memorandum of a contract, parol evidence will be admissible in support of the defendants' claim that its terms are incomplete.

7. In *Scheck,* it was this combination of facts that "unquestionably gave the plaintiff an opportunity to decline to go through with the deal before he signed" and led the Court to observe that "[c]ertainly the defendant enjoyed the same privilege." *Id.* at 470, 311 N.Y.S.2d 841, 260 N.E.2d 493. While it is true that plaintiff's signature is required on "the Agreement" before she can be bound by it, unlike *Scheck,* this is not due to the existence of circumstances conclusively establishing that this was the intent of the parties. Rather, it is because the Statute of Frauds requires the party to be bound to sign the agreement or some note or memorandum of it.

*N.E.D. Holding Co. v. McKinley*, 246 N.Y. at 45, 157 N.E. 923 (citation omitted).

■■■ Thus, defendants are still at liberty to show that the memoranda are incomplete because they do not evidence the understanding of the parties that the contract would not take effect until it was formally executed. As the Appellate Division has held:

> Where a formal written contract is not executed, enforcement will be denied if it is found that it was the intention of the parties that only an executed writing would bind (*Brause v. Goldman*, 9 N.Y.2d 620 [210 N.Y.S.2d 225]). If no such intention is found, the question is whether there are collateral writings sufficient to satisfy the statute of frauds (*Scheck v. Francis*, 26 N.Y.2d 466 [311 N.Y.S.2d 841, 260 N.E.2d 493]).

*APS Food Systems, Inc. v. Ward Foods, Inc.*, 70 A.D.2d 483, 486, 421 N.Y.S.2d 223 (1st Dep't 1979).

Proof that the parties had explicitly or implicitly reached an understanding not to be bound until the written agreement was executed would overcome any prima facie showing that the parties intended the memoranda to constitute the complete contract. *See Papaioannou v. Britz*, 285 A.D. 596 at 601, 139 N.Y.S.2d 658 (1st Dep't 1955); 56 N.Y.Jur. *Statute of Frauds* at § 198. Criteria relevant to establishing such an agreement may include: 1) whether one or both of the parties explicitly reserved the right to be bound until a written agreement was signed; 2) whether "one party had partially performed, and that performance ha[d] been accepted by the party disclaiming the contract;" 3) whether "there was literally nothing left to negotiate or settle, so that all that remained to be done was to sign what had already been fully agreed to;" and 4) whether the agreement, "as a practical business matter, ... involved a scale of investment and complexity such that a writing would be expected." *R.G. Group, Inc. v. Horn & Hardart ·Co.*, 751 F.2d at 75–76 (citations omitted); *see Jim Bouton Corp. v. Wm. Wrigley Jr. Co.*, 902 F.2d 1074, 1081 (2nd Cir.1990).

It is not necessary at this time to resolve this issue because it is obvious that there is an issue of fact whether the parties intended to be bound only by a formally executed writing. Pre-trial discovery is necessary to ascertain "whether the parties' words and deeds evidence such an intent." *R.G. Group, Inc. v. Horn & Hardart Co.*, 751 F.2d at 75; *see Rothenberg v. Lincoln Farm Camp, Inc.*, 755 F.2d 1017, 1019 (2nd Cir.1985) (citations omitted). Indeed, given the fact that the central issue of the breach of contract claim turns on the intent of the parties, it may not be appropriate for summary judgment, *see Babdo Sales, Inc. v. Miller–Wohl Co.*, 440 F.2d 962, 965 (2nd Cir.1971); *Jillcy Film Enterprises, Inc. v. Home Box Office, Inc.*, 593 F.Supp. 515, 519–20 (S.D.N.Y.1984), although the parties are not precluded from making such a motion after discovery is completed.

While this may be a close case, rejection of the defense based on the Statute of Frauds will not do violence to the policies underlying the statute. As one commentator has aptly observed:

> [W]hile some of the original reasons for enacting the Statute of Frauds have disappeared, other reasons for continuing it in force have become apparent.... Not only is it useful to prevent fraud by deliberate overreaching regarding the terms of the bargain, but the presence of a writing prevents to a large extent otherwise possible misunderstanding of what actually were the terms of the bargain. It also preserves the exact wording of the terms, rather than leaving them to the recollection of their general purport preserved in the elusive and treacherous memory of interested parties.

L. Vold, *The Application of the Statute of Frauds Under the Uniform Sales Act*, 15 Minn.L.Rev. 391, 393–95 (1931) (footnote omitted). Because defendants or their agents have written the memoranda at issue, there is little danger of "fraud by deliberate overreaching" or "possible innocent misunderstanding" of the terms of the contract. Likewise, because all of the essential terms of the contract are set out in memoranda prepared by the party to be

charged, there will be no need to rely upon "the elusive and treacherous memory of interested parties" to supply its terms. In a case such as this, where a "reasonable construction of the writing" indicates that the parties shared a contractual relationship and "the peril of perjury is largely, if not entirely, absent," the Statute of Frauds should not be allowed " 'to afford persons a means of evading just obligations.' " *Morris Cohon & Co. v. Russell*, 23 N.Y.2d 569, 574, 297 N.Y.S.2d 947, 245 N.E.2d 712 (1969) (citation omitted). At the very least, the documents produced so far, when considered with the surrounding circumstances, justify the denial of defendants' motion until plaintiff has the opportunity to discover whether other documents exist that would satisfy the Statute of Frauds.

Accordingly, defendants' motion for summary judgment of plaintiff's breach of contract claim is denied and "plaintiff is entitled to proceed with disclosure procedures to determine whether there was an enforceable agreement between [the parties]." [8] *APS Food Systems, Inc. v. Ward Food Inc.*, 70 A.D.2d at 487, 421 N.Y.S.2d 223.

### (II)

■ Defendants move to dismiss plaintiff's second, third and fourth causes of action for failure to state a claim other than for breach of contract. While it is not entirely clear how these poorly pleaded claims should be characterized, they appear to allege causes of action for intentional infliction of emotional distress, fraud and wrongful discharge.[9] A claim for wrongful discharge is predicated upon the existence of a constitutional, statutory or contractual entitlement to employment. *Murphy v. American Home Products Corp.*, 58 N.Y.2d 293, 305, 461 N.Y.S.2d 232, 448 N.E.2d 86 (1983). Based on the same evidence that compels the denial of summary judgment of her breach of contract claim,

plaintiff has established that a triable issue of fact exists whether she was an employee at will who could be "freely terminated by either party at any time for any reason or even for no reason." *Id.* at 300–01, 461 N.Y.S.2d 232, 448 N.E.2d 86 (citation omitted).

■ On the other hand, plaintiff has not stated a claim for fraud or intentional infliction of emotional distress. In order to sustain a cause of action for fraud under New York law, a plaintiff must prove:

(1) that the defendant made a representation, (2) as to a material fact, (3) which was false, (4) and known to be false by the defendant, (5) that the representation was made for the purpose of inducing the other person to rely upon it, (6) that the other party rightfully did so rely, (7) in ignorance of its falsity (8) to his injury.

*Brown v. Lockwood*, 76 A.D.2d 721, 730, 432 N.Y.S.2d 186 (2nd Dep't 1980) (citations omitted).

■ A plaintiff's fraud claim must also satisfy Fed.R.Civ.P. 9(b) to survive a motion to dismiss. Rule 9(b) provides:

(1) In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge and other conditions of mind of a person may be averred generally.

Compliance with Rule 9(b) requires a plaintiff to specify " 'the time, place and content of the false misrepresentation [sic], the fact misrepresented and what was obtained or given up as a consequence of the fraud.' " *CBS, Inc. v. Ahern*, 108 F.R.D. 14, 22 (S.D.N.Y.1985) (citation omitted). Simply alleging breach of contract is not enough; a plaintiff must allege facts sufficient to show that the defendant never intended to honor the terms of the contract. *Beck v.*

---

8. Because the motion has been denied, it is unnecessary to address plaintiff's arguments based on the doctrines of part performance and promissory estoppel, although it is doubtful that these doctrines would salvage an oral agreement in this case. *See Klein v. Jamor Purveyors,* 108 A.D.2d 344, 348–49, 489 N.Y.S.2d 556 (2nd Dep't 1985).

9. At the oral argument of this motion, plaintiff's counsel conceded that plaintiff could not state a claim for tortious breach of her employment agreement under the law of either New York or New Jersey.

*Manufacturers Hanover Trust Co.*, 820 F.2d 46, 49–50 (2nd Cir.1987); *Soper v. Simmons Int'l Inc.*, 632 F.Supp. 244, 248–50 (S.D.N.Y.1986).

■ In her third cause of action, plaintiff alleges in relevant part:

29. Plaintiff was induced by the promises of Defendant to leave her employment with American Tectronics.

30. Defendants did or should have reasonably expected that Plaintiff would rely upon the promise of continued employment to her detriment.

31. As a result of the promises and assurances made by the Defendants to the Plaintiff, Plaintiff relinquished a valuable employment opportunity and career advancement with American Tectronics.

32. When the Defendant terminated the Plaintiff's employment, they breached their promise of continued employment to her, causing her substantial injury.

33. As a direct and proximate result of the aforesaid detrimental reliance and breach of contract upon the assurances of Defendant, Plaintiff sustained injuries and damages by way of a loss of career advancement opportunity, loss of earnings, and loss of fringe benefits.

Noticeably absent from the complaint is an allegation that defendants falsely represented a material fact. While plaintiff does allege that she was induced to leave her prior employment "by the promises of Defendant[s]," there is nothing patently false about these promises. Indeed, she admits that defendants employed her for eight months. *See Burke v. Bevona*, 866 F.2d 532, 539 (2nd Cir.1989). Plaintiff fails to allege that any other promises were made and she fails to state "the circumstances constituting fraud or mistake ... with particularity" in order to satisfy Rule 9(b).

■ Plaintiff also fails to state a claim for intentional infliction of emotional distress. Under New York law, "[a]n action may lie for intentional infliction of severe emotional distress 'for conduct exceeding all bounds usually tolerated by de-

cent society' (Prosser, Torts [4th ed.], § 12, p. 56)." *Fischer v. Maloney*, 43 N.Y.2d 553, 557, 402 N.Y.S.2d 991, 373 N.E.2d 1215 (1978) (citation omitted). In *Fischer*, the New York Court of Appeals relied upon the Restatement, Torts 2d, for the following rule:

One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress (§ 46, subd. [1]); see for one aspect Comment d: Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.

*Id.* at 557–58, 402 N.Y.S.2d 991, 373 N.E.2d 1215.

In her second cause of action, plaintiff alleges in relevant part:

24. Accordingly, it was within the contemplation of the parties that breach of the promises and assurances of continued employment would cause Plaintiff severe mental and emotional distress.

25. As a direct and proximate result of the aforesaid breach of contract, Plaintiff has suffered great mental and emotional distress, anxiety, and depression.

Plaintiff does not allege that defendants' conduct was outrageous in character or extreme in degree. In the absence of such allegations, this claim must fail.

### (III)

■ Defendants argue that the breach of contract claim against Robert Kaplan and R.K. Associates must be dismissed because Alandco was plaintiff's only employer and because "they are not alleged ... as liable for the 'contract' upon which [the] complaint is based." In her complaint, plaintiff alleges that she was offered a written employment contract with Alandco and that "[d]efendant RK paid [her] moving expenses and commenced paying [her] salary in December 1988." She also relies on the fact that the letters of June 1, 1988

and November 2, 1988 were written on "R.K. Associates" stationery, that one letter was signed by Robert Kaplan and the other by Linda Kaplan, and that the address given in the contract for Alandco is the same as that given for R.K. Associates on its stationery. Prior to any discovery on the issue whether Robert Kaplan and R.K. Associates were the alter ego of Alandco, this evidence is sufficient to compel the denial of defendants' motion to dismiss the claims against these defendants. *See Feigen v. Advance Capital Management Corp.*, 150 A.D.2d 281, 282, 541 N.Y.S.2d 797 (1st Dep't 1989).

### (IV)

Lastly, defendants move to dismiss, or alternatively to strike paragraphs from, the complaint on the ground that plaintiff has not sufficiently alleged citizenship or injury in order to sustain her action based on diversity jurisdiction. 28 U.S.C. § 1332 (1966). In response plaintiff submitted an affidavit, in which she alleges that she is a citizen of Pennsylvania and will be entitled to at least $100,000.00 in salary, health insurance, vacation pay and commissions if she prevails on her breach of contract claim. Affidavit of Marilyn Dickerson at Paragraph 5–7 and Exhibit A. Based on these allegations, defendants' motions to dismiss and strike are denied and plaintiff is granted leave to amend her complaint to allege that she is a citizen of Pennsylvania and to plead monetary damages for each of her remaining claims.

### Conclusion

The motion for summary judgment of the first cause of action for breach of contract and the fourth cause of action for wrongful discharge is denied. The motion to dismiss the second and third causes of action for intentional infliction of emotional distress and fraud respectively is granted with leave to replead. The motion to dismiss Robert Kaplan and R.K. Associates as defendants is denied.

SO ORDERED.