OPINION OF THE COURT
Richard F. Braun, J.
This is an action for, inter alla, breach of contract, in which this court held a nonjury trial over the course of eight days. Plaintiff is a law firm which has a subspecialty of assisting its clients to collect claims under the No-Fault Insurance Law. Defendant is a computer consultant. Plaintiff was having some *559 difficulties with its computer so it contracted with defendant to remedy the problems. Defendant did so, and plaintiff paid him for his services. Defendant then convinced plaintiff to upgrade its computer system. Plaintiff orally agreed to retain defendant for that purpose. With defendant’s assistance, plaintiff purchased a new computer, and defendant modified plaintiff’s software to make it compatible with the new computer.
Defendant estimated that the cost to plaintiff on this second contract would be $4,000-$5,000. The work took much longer than had been anticipated, and plaintiff ended up paying defendant a total of $21,375 on the second contract. On January 18, 1986, plaintiff made its last payment to defendant on the second contract. The payment was made at plaintiff’s office. Defendant then put a floppy disk into plaintiff’s computer, and said to one of plaintiff’s partners that, if plaintiff had not paid defendant, he would not have entered the data contained on the floppy disk into the computer, which would have subsequently crashed.
After that date, once per month defendant telephoned the person employed by plaintiff who did the computer data entry work for plaintiff, and asked her how the computer was performing and what claim number plaintiff had reached. Plaintiff’s computer contained a software program modified by defendant, which included data on plaintiff’s no-fault insurance clients. Each claim of those clients was assigned a claim number.
That computer program in plaintiff’s system shut down at claim number 56789 in July 1986. After that number, the system could not be utilized in the directory existing for the program, which significantly interfered with plaintiff’s ability to work on its clients’ claims and do billing. Although plaintiff’s program could have functioned again if a new subdirectory was created each time that it stopped working at 56789, plaintiff was not aware that such a solution to the problem was possible. The cause of the problem was that defendant intentionally placed in the program a conditional statement, of which plaintiff had been unaware. The conditional statement was a hidden directive in the program which caused the program to stop working when it reached claim number 56789. Although defendant denied doing so, the court does not credit his testimony, in part because number 56789 is an inherently suspicious number at which the program stopped functioning.
*560 The subject program in plaintiffs computer was in executable form only. This means that, although the program was used on the computer screen in English and numbers, its structure was entered in the computer only in computer language. Thus, in order to modify the structure of the program, one had to have the source code for the program. Defendant had kept the source code. Defendant told one of plaintiffs partners that he had destroyed the source code and that it would have had to be redone to modify the program.
Defendant gave no warranties to plaintiff. Defendant solicited a maintenance contract from plaintiff to cover any problems that might arise with plaintiff’s system after defendant had completed his work, but plaintiff declined the offer because its partners thought that it had already paid defendant too much money for his services.
After the computer program shut down, plaintiff hired another computer consultant to work on the computer system, so that the program could function again. He was successful, and plaintiff paid him $7,000 for his services. That consultant testified credibly that it was his opinion that the computer program had crashed due to a conditional statement that defendant had secretly placed in the program.
Defendant’s computer consulting business had slowed to a trickle at the time that he completed his work for plaintiff. It is this court’s conclusion that defendant intentionally put the conditional statement into plaintiffs software, with the hope that, after the system stopped, plaintiff would retain him again to correct the problem.
Defendant breached his second contract with plaintiff, although he did provide some services to plaintiff thereunder. Plaintiff is entitled to compensatory damages from defendant in the amount of $7,000 in order to reimburse plaintiff for its cost of hiring the second computer consultant to cure the problems created by defendant with plaintiff’s computer program.
In one of its causes of action, plaintiff seeks only punitive damages against defendant. Punitive damages are not a separate cause of action. (APS Food Sys. v Ward Foods, 70 AD2d 483, 488 [1st Dept 1979]; Levine v Constanzo, NYLJ, Nov. 1, 1991, at 21, col 4 [App Term, 1st Dept].) However, punitive damages need not be specifically requested in a complaint. (Gill v Montgomery Ward & Co., 284 App Div 36, 40 [3d Dept 1954]; Korber v Dime Sav. Bank, 134 App Div 149, 150 [2d *561 Dept 1909]; Sanders v Rolnick, 188 Misc 627, 631 [App Term, 1st Dept], affd without opn 272 App Div 803 [1st Dept 1947].) In order to justify an imposition of punitive damages, a complaint must allege the elements of malice, willfulness, wantonness or recklessness, or at least facts supporting the imposition of punitive damages. (See, Fittipaldi v Legassie, 18 AD2d 331, 337 [4th Dept 1963]; Gill v Montgomery Ward & Co., supra, 284 App Div, at 40; Bingham v Gaynor, 135 App Div 426, 427 [1st Dept 1909]; Kipsborough Realty Corp. v Goldbetter, 81 Misc 2d 1054 [Civ Ct, NY County 1975]; Dembar v Reynolds & Co., 40 Misc 2d 84 [Sup Ct, NY County 1963].)
Although the general rule is that punitive damages are not awarded for breach of contract claims, they "may be awarded when to do so would 'deter morally culpable conduct.’ (Halpin v Prudential Ins. Co., 48 NY2d 906, 907; Williamson, Pickett, Gross v Hirschfeld, 92 AD2d 289, 295 [punitive damages for conduct involving bad faith].)” (Minjak Co. v Randolph, 140 AD2d 245, 249 [1st Dept 1988]; see, Hubbell v Trans World Life Ins. Co., 50 NY2d 899, 901 [1980]; Mandelblatt v Devon Stores, 132 AD2d 162, 167 [1st Dept 1987].) "It is not the form of the action that gives the right * * * to give punitory damages, but the moral culpability of the defendant.” (Hamilton v Third Ave. R. R. Co., 53 NY 25, 30 [1873].) As the Court of Appeals stated in the lead case of Walker v Sheldon (10 NY2d 401, 404 [1961]): "Punitive or exemplary damages have been allowed in cases where the wrong complained of is morally culpable, or is actuated by evil and reprehensible motives, not only to punish the defendant but to deter him, as well as others who might otherwise be so prompted, from indulging in similar conduct in the future. (See, e.g., Tommey v. Farley, 2 N Y 2d 71, 83; Krug v. Pitass, 162 N. Y. 154, 161; Hamilton v. Third Ave. R. R. Co., 53 N. Y. 25, 28; Oehlhof v. Solomon, 73 App. Div. 329, 333-334.) * * * Moreover, the possibility of an award of such damages may not infrequently induce the victim, otherwise unwilling to proceed because of the attendant trouble and expense, to take action against the wrongdoer.”
Plaintiff did plead in its breach of contract cause of action under which compensatory damages are being awarded that defendant’s conduct was done "with malicious intent”. This is a sufficient pleading to entitle plaintiff to punitive damages, and defendant’s actions here call out for the imposition of punitive damages against him.
Defendant’s actions were arguably the commission of a class *562 A misdemeanor. Penal Law § 156.20 provides: "A person is guilty of computer tampering in the second degree when he uses or causes to be used a computer or computer service and having no right to do so he intentionally alters in any manner or destroys computer data or a computer program of another person.” Certainly, defendant had no right to do so when he put the conditional statement in plaintiff’s program and caused it to crash. His act was clearly intentional. It would thus appear that he committed a crime when he acted as he did. (See, People v Versaggi, 136 Misc 2d 361 [Rochester City Ct 1987].) To the extent that defendant’s actions may not fit under the Penal Law, the New York State Legislature should act in this computer age to amend the law.
Computers are intricate machines, and their software programs are often complexly designed, and written in mathematical language. Most people who use computers do not have the expertise to remedy problems that arise with computers and computer software. Thus, members of the general public are often captives of those who have developed the expertise needed to understand computers and computer programs, and must rely upon those experts to act with good faith.
Some people with computer expertise have utilized their advanced knowledge to instill great anxiety in the computer-using business and consumer public, and have caused great damage to some of them. Only a few months ago, the users of computers nationwide, including those in the courts of Manhattan, were plagued by fears that computer viruses had been planted in their computer programs which would have caused, and in some cases did cause, their computers to crash. (See, NY Times, Mar. 7, 1992, at 1, col 5; at 6, col 2 [Natl ed]; Pines, Federal, State Courts Attack Computer Virus and Prevail — So Far, NYLJ, Mar. 4, 1992, at 1, col 3.) Although the culprits there may not have been caught, defendant has been, and the imposition of punitive damages against defendant should send a message to others who would consider committing similar acts in the future, and even to some who may eradicate their already planted, as yet silent viruses which are presently waiting to awaken and wreak their havoc.
This court regrets that it is confined by the complaint before it to be able to only award punitive damages of $18,000 against defendant, that being the total of $25,000 sought in the subject cause of action minus the $7,000 already awarded *563 as compensatory damages. Defendant’s actions in breaching his contract with plaintiff were morally culpable and seemingly criminal. Therefore, this court finds for plaintiff against defendant in the amount of $7,000 compensatory damages and $18,000 punitive damages.