■ KRIS MERSCHROD, Respondent, v CORNELL UNIVERSITY, Appellant.—Casey, J. P. Appeals (1) from a judgment of the Supreme Court (Bryant, J.), entered February 23, 1987 in Tompkins County, upon a verdict rendered in favor of plaintiff, and (2) from an order of said court, entered February 11, 1987 in Tompkins County, which, inter alia, denied defendant's motion to set aside the verdict.

As part of its program to help research sociological aspects of small bean farmers, defendant published a notice in December 1983 of a job available for a social scientist who would live in Ecuador for two years. The research project was a collaboration involving defendant, Michigan State University and the Government of Ecuador, and was funded with money from USAID through its Bean/Cowpea Collaborative Research Support Program (hereinafter the Program). Plaintiff read the job description and, although he submitted a resumé to Linda Russo telling her he wished to apply, he failed to file a formal application.

In February 1984, at a seminar explaining the Program, plaintiff learned that he had been chosen. Defendant wrote a letter to plaintiff, dated February 16, 1984, informing him that defendant's Program staff had selected plaintiff "for the position of project field sociologist". The letter also stated: "the Director General of INIAP and his staff need to accept and ratify in writing your appointment before International Agriculture can formally offer you a two year appointment to the project." Defendant obtained this approval eight days later. Defendant "formally" employed plaintiff, as a "temporary appointment", on March 1, 1984, although plaintiff had commenced working even before he was on defendant's payroll. Drafts of a formal employment contract for the two-year appointment were circulated between defendant's staff and plaintiff. Russo wrote that the formal contract had been drafted and accepted and approved in March 1984. However, the parties never executed it.

Prior to the February 16, 1984 letter and the seminar at which defendant announced plaintiff's appointment, plaintiff met with Donald H. Wallace, a principal investigator or head researcher of the Program. Plaintiff claims that Wallace assured him that the current field sociologist salary of $25,000 per year would be increased to $30,000. Wallace did not recall discussing salary at this meeting. Several documents indicate that defendant tried to obtain $30,000 per year for plaintiff. A letter dated March 1, 1984 requested that plaintiff receive $14.71 per hour ($30,000 per year) during the temporary employment. The request was necessary because this hourly rate exceeded that normally paid to temporary employees. The appropriate office granted the request and, on plaintiff's appointment form, defendant agreed to pay plaintiff the equivalent of $30,000 per year. Finally, a letter dated March 21, 1984 requested a raise in salary for the job classification plaintiff would fill as the two-year appointee, from $25,000 to $30,000 per year.

Prior to February 16, 1984, according to plaintiff's testimony, he was aware of benefits that accompany appointments funded by the Federal Government through USAID. There were no discussions regarding this item except for plaintiff's letter dated June 29, 1984 asking some specific questions. One benefit of which plaintiff was aware was the "post differential", defined as a percentage increase to the base salary predicated on where the employee works. Post differentials are analogous to hazardous or inconvenience pay. A 15% differential was considered part of plaintiff's salary.

While a temporary employee from March 1, 1984 through July 27, 1984, plaintiff traveled to Ecuador with some of the Program staff to meet his future co-workers. He remained in Ecuador from the end of March 1984 until June 1984, conducting preliminary research and attempting to obtain housing for himself and his family. Plaintiff returned to New York in June 1984 to gather his belongings and family, and to arrange their move to Ecuador for the remainder of his two-year term. Upon his return here, disagreements arose between plaintiff and the Program staff over research methods. These philosophical disagreements extended through July 1984 and, as a consequence, the staff unanimously decided not to appoint plaintiff to the two-year position. This decision was reduced to a writing dated July 25, 1984.

Plaintiff filed a complaint with defendant's grievance committee, which decided that plaintiff was entitled to compensation from February 1984 to July 1984. No decision was reached regarding the propriety of plaintiff's dismissal. Plaintiff then instituted this suit for breach of contract, alleging two separate causes of action. In the first, plaintiff sought $111,705 in general damages and, in the second, he sought $335,115 in punitive damages. Defendant's answer was a general denial and the affirmative defense of the Statute of Frauds. Before trial, defendant moved for summary judgment and was granted partial summary judgment dismissing plaintiff's second cause of action for punitive damages.

The jury returned a verdict in favor of plaintiff based on its answers to five written interrogatories submitted by Supreme Court, finding that (1) defendant employed plaintiff for two years beginning February 16, 1984 at a salary of $30,000 per year, (2) plaintiff did not breach the contract, (3) defendant did breach the contract, (4) part of the employment contract was a 15% post differential, and (5) plaintiff's damages were $24,629. Defendant moved for an order setting aside the verdict and plaintiff cross-moved for an order fixing the date from which interest on the judgment should be added. Supreme Court denied defendant's motion, except to reduce the verdict to $22,379 and fixed the date for interest at February 16, 1986. Defendant appeals from this order and from the judgment entered on the jury's verdict.

On this appeal, defendant argues that the evidence was insufficient to support a finding of the existence of a contract, that Supreme Court should have found no contract existed as a matter of law, and that the Statute of Frauds prevented the finding of the existence of a valid contract. Therefore, defen-

dant contends that its motion for a directed verdict should have been granted, or at least its motion setting aside the verdict and granting a new trial should have been granted.

To be an effective and valid employment contract, all the essential elements thereof must be shown *(Rodman v Aivagedis,* 123 AD2d 429). These elements consist of the identity of the parties, the terms of employment, which include the commencement date, the duration of the contract and the salary. While these terms were not contained in a single document, plaintiff resorted to several separate documents to prove his case and some of those documents involved issues of fact. Oral testimony regarding intent, amplification and explanation was necessary to clarify and explain the various writings referred to above and issues of credibility were, therefore, presented. In our view, the evidence was sufficient to permit a jury resolution and Supreme Court properly deferred to the jury's findings *(see, Harty v Kornish Distribs.,* 119 AD2d 729; *Weiss v Salamone,* 116 AD2d 1009; *Delgado v Board of Educ.,* 65 AD2d 547, *affd* 48 NY2d 643).

With respect to defendant's reliance on the Statute of Frauds, we believe it to be inapposite. Although General Obligations Law § 5-701 provides that an agreement which by its terms is not to be performed within one year from the making thereof is void unless in writing, the writing is not required to be a single document. " 'It may be pieced together out of separate writings, connected with one another either expressly or by the internal evidence of subject matter and occasion' " *(Crabtree v Arden Sales Corp.,* 305 NY 48, 54, quoting *Marks v Cowdin,* 226 NY 138, 145). At trial plaintiff produced eight documents which, when explained, connected and combined with oral testimony, were legally sufficient to pose a factual question as to whether an employment contract existed. This view is bolstered by the February 16, 1984 letter, the July 12, 1984 letter, the memorandum dated March 1, 1984, the appointment form and the letter dated March 21, 1984. Supreme Court was, therefore, correct in refusing to grant defendant the relief it sought.

As to damages, we also agree with the determination of Supreme Court. In this regard, defendant first urges that plaintiff's damages should be precluded for plaintiff's failure to comply with defendant's subpoena seeking plaintiffs' documents in support of his claims of damages. The subpoena was served on January 5, 1987, the date set for trial, and plaintiff excused his noncompliance because the records were in Ecuador. Since the subpoena was untimely served, Supreme Court

ruled it a nullity. We agree *(see,* Siegel, Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, CPLR C2305:1, at 231).

Defendant further argues that the evidence showed that plaintiff worked and earned $20,461 from January 1986 through July 1986 and that the entire amount should be applied in mitigation, since plaintiff did not allocate these earnings to the time covered by the contract. The contract by its terms terminated March 1, 1986. Supreme Court, therefore, allowed the jury to prorate plaintiff's earnings on the basis of two sevenths of $20,461, which the jury did and found the mitigating figure to be $5,846. In the circumstances, this method was entirely reasonable and defendant has cited no authority to the contrary.

Finally, defendant objects to the inclusion of a 15% post differential figure in the award, since plaintiff did not work in Ecuador during all of the contract period. We believe, however, that this amount would have been realized under the contract but for defendant's breach, as found by the jury. We thus consider the post differential amount to have been properly included in the damage award.

The judgment and order appealed from should, therefore, be affirmed.

Judgment and order affirmed, with costs. Casey, J. P., Yesawich, Jr., Harvey and Mercure, JJ., concur.