Kalman ROSS & Anita Ross, Plaintiffs,

v.

A.H. ROBINS COMPANY, INC., E. Clairborne Robins, William L. Zimmer, III, and E. Clairborne Robins, Jr., Defendants.

No. 77 Civ. 1409 (CBM).

United States District Court,
S.D. New York.

Sept. 12, 1988.

Wolf, Popper, Ross, Wolf & Jones, New York City by Eric L. Keisman, for plaintiffs and Class.

Cahill, Gordon, & Reindel, New York City by Leonard A. Spivak, for defendants.

## OPINION

MOTLEY, District Judge.

### FACTS

Plaintiffs seek approval of a proposed settlement in a securities class action against A.H. Robins Company, Inc. and certain of its officers and directors. The settlement was presented to this court on April 4, 1985, but remained necessarily in limbo pending now resolved bankruptcy proceedings against the Robins company.

In a case that began some eleven years ago, Plaintiffs alleged that Defendants vio-lated Section 10(b), 15 U.S.C. § 78j(b) (1982), and Rule 10b–5, 17 C.F.R. 240.10b–5 (1984), of the Securities Exchange Act of 1934. The substance of this allegation is that Defendants fraudulently deceived the investing public with regard to the true value of Robins' securities by withholding material adverse information concerning a Robins product—the Dalkon Shield—and by making false statements with regard to the safety and efficacy of that device.

The settlement would create a fund of $6.9 million dollars for the benefit of a class of purchasers of Robins' common stock during a specified period and would result in a dismissal with prejudice of all Plaintiffs' claims against all Defendants. Plaintiffs' attorneys' fees are also provided for and the proposed award is considered in a seperate opinion.

## DISCUSSION

■ When parties to class action submit a proposed settlement the court must determine that the settlement is "fair, reasonable, and adequate." *Weinberger v. Kendrick,* 698 F.2d 61, 73 (2d Cir.1982), *cert. denied,* 464 U.S. 818, 104 S.Ct. 77, 78 L.Ed. 2d 89 (1983).

■ A strong initial presumption exists in favor of a proposed settlement where the proponents establish that: (i) the settlement is not collusive but was reached after arm's length negotiation; (ii) the proponents have counsel experienced in similar cases; (iii) there has been sufficient discovery to enable counsel to act intelligently; and (iv) the number of objectants or their relative interest is small. *Weinberger et. al. v. Flow General, Inc.,* CCH Fed.Sec.L.Rep. @91,524 at 98,650 (S.D.N.Y. 1984) [1984 WL 2437].

■ Ultimately, a court must determine that the settlement is reasonable in light of "the likely rewards of litigation." *Protective Committee for Independent Stockholders of TMT Trailor Ferry, Inc. v. Anderson,* 390 U.S. 414, 424–25, 88 S.Ct. 1157, 1163, 20 L.Ed.2d 1, 10 (1968). The adequacy of any settlement can only be

determined by holding it up against "the strength of the Plaintiffs' case", *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 455 (2d Cir.1974), and against the risks, delays and uncertainties of continued litigation. A court should not, however, "turn the settlement hearing into a trial or a rehearsal of a trial." *Newman v. Stein*, 464 F.2d 689, 692 (2d Cir.), *cert. denied*, 409 U.S. 1039, 93 S.Ct. 521, 34 L.Ed.2d 488 (1972). A trial on the merits is not required for a court to properly evaluate the adequacy of any proposed settlement in a class action. *Jones v. National Distillers and Chemical Corp.*, CCH Fed.Sec.L.Rep. @97,288 at 97,013 (S.D.N.Y.1980) [1980 WL 1373].

■ In the instant case, Plaintiffs have met the burden of establishing an initial presumption in favor of the settlement. Plaintiffs have been represented by counsel who are well experienced in complex securities cases. Agreement was the product of considerable arm's length bargaining and was not collusive. Indeed, settlement took place only on the eve of trial and after eight years of hard fought litigation. Effective negotiations began with less than three months remaining before the discovery deadline and culminated only after all discovery had been completed. Plaintiffs' discovery was exhaustive and more than sufficient to have allowed counsel to act intelligently during settlement talks. Finally, Plaintiffs mailed approximately 29,000 settlement notices to class members and published additional notices in the "Wall Street Journal" and several other newspapers. No objections to the proposed settlement were received. As noted in *Weiss v. Drew National Corp.*, 465 F.Supp. 548 (S.D.N.Y.1979), "[t]he absence of objectants may itself be taken as evidencing the fairness of the settlement." *Id.* at 551.

■ What remains to be determined is the reasonableness of the proposed settlement in light of the Plaintiffs' chances for success at trial. In this action Plaintiffs faced numerous factual and legal obstacles to recovery. A thorny motion reserved for trial threatened to dismiss most of Plain-

tiffs' claims as barred by the statute of limitations. In addition, Plaintiffs faced difficulties over the admissibility of evidence going to the weight of their case. Finally, Plaintiffs were confronted with Defendants' continuing efforts to block the application of Section 10(b) and Rule 10b–5 to this case. Without reaching the final merits of these debates, this Court notes that Plaintiffs' ultimate success would have depended on the favorable resolution of a number of difficult and uncertain legal issues.

As to the major factual issues presented in the litigation, it appears that the jury would have faced a battle of expert witnesses hotly contesting the correct interpretation—and thus the materiality—of information received by Robins concerning the safety and efficacy of the Dalkon Shield. Other battles among experts loomed over the causal connection between the rise and fall of that product and Robins common stock during the time period at issue in the litigation. Finally, both sides vigorously disputed the imputation of *scienter* to Robins and each of the individual defendants. In fact, Plaintiffs have candidly admitted that they could not recover against the named individual defendants because "the weight of the evidence simply did not support the proposition that Messrs. Robins, Robins, Jr. or Zimmer knowingly or recklessly subjected Robins to the [corporate] risks that eventuated" from failing to disclose information with regard to the safety and efficacy of the Dalkon Shield. (Plaintiffs' Affidavit in Support of the Proposed Settlement at 70.) Again—without expressing any final opinion as to the merits of the suit—this Court notes that Plaintiffs' chances of ultimate success depended on the favorable resolution of a number of unpredictable and highly contested factual determinations by the jury.

The risks of trial aside, Defendants have already demonstrated their willingness to avail themselves of the full appellate process should any decision be rendered against them. With one appeal to the Supreme Court already under their belts, De-

fendants would undoubtedly confront Plaintiffs with years of expensive appeals should a verdict be returned for the Plaintiff-class. The expense and possible duration of litigation can "weigh heavily in favor of settlement", *Bullock v. Administrator of Estate of Kircher*, 84 F.R.D. 1, 10 (D.N.J.1979), and does so in this case.

As to the adequacy of the exact amount of the settlement fund, Plaintiffs' experts were prepared to testify that the most likely quantum of damages was between $15–17 million dollars assuming that Plaintiffs prevailed as to liability over the entire class period. (Plaintiffs' Affidavit in Support of Proposed Settlement at 68). The settlement fund of $6.9 million is in excess of 40% of this potential maximum recovery and is fully 46% of the $15 million lower limit of that recovery. Courts have approved settlements representing a far lower percentage of the expected recovery in class actions no more problematic than the one at bar. *See Weinberger v. Kendrick, supra; Grinnell, supra; Newman, supra; See also Bullock, supra* at 11 (noting that recoveries of $5 million or more are rare in securities class actions). Considering the difficulties with Plaintiffs' case, the proposed settlement fund is undoubtedly appropriate when compared against the likely rewards of further litigation.

## CONCLUSION

In light of the legal and factual hurdles to recovery and taking into account the risks, expenses, and delays attendant on the continued litigation of this action, this Court finds that the proposed settlement is fair, reasonable and adequate and is in the best interests of the Plaintiff-class.

The proposed settlement is approved in all respects and this opinion will be accompanied by an Order and Final Judgment in this action.

## ON APPLICATION FOR ATTORNEYS' FEES

### STATEMENT OF FACTS

This action is a class action commenced on March 23, 1977 by plaintiffs Kalman Ross and Anita Ross on their behalf and on the behalf of all persons similarly situated who purchased shares of common stock of A.H. Robins Company, Inc. ("Robins") during the period between March 8, 1971 and June 28, 1974. Plaintiffs sought money damages arising from their purchase of Robin's common stock in reliance on Robin's alleged misrepresentations and omissions concerning the safety of the Dalkon Shield. In particular, plaintiffs alleged violations of the Securities Exchange Act of 1934, Section 10(b) thereof and common law principles. By order dated January 19, 1983, this court certified the class action pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure.

After protracted and intensive litigation, plaintiffs and defendant Robins submitted to the court a Stipulation of Settlement dated April 4, 1985. A hearing was held June 14, 1985 following this court's order entered on April 4, 1985 to consider the terms and conditions of the proposed settlement and the application of plaintiffs' attorneys for attorneys' fees and reimbursement of expenses.

## DISCUSSION

The present opinion addresses the application for attorneys' fees and reimbursement of expenses of plaintiffs' counsel, the law offices of Wolf Popper Ross Wolf & Jones in the amount of $1,800,000 and $255,307.44, respectively, for their efforts in obtaining the settlement providing payment of $6,900,000 into a settlement fund. (A separate opinion examines the terms and conditions of the proposed settlement). This court must determine whether Wolf Popper has requested reasonable attorneys' fees.

The Supreme Court has stated that in evaluating the reasonableness of attorneys' fees,

> The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate. This calculation provides an objective basis on which to make an initial estimate of the value of a lawyer's services.

*Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983).

The Second Circuit has followed this approach. "Under the lodestar approach, attorney's fees are calculated by multiplying the number of billable hours that the prevailing party's attorneys spend on the case by 'the hourly rate normally charged for similar work by attorneys of like skill in the area.' " *New York State Ass'n for Retarded Children Inc. v. Carey*, 711 F.2d 1136, 1140 (2d Cir.1983) (quoting *City of Detroit v. Grinnell Corp.* 560 F.2d 1093, 1098 (2d Cir.1977)). From this initial objective base, "the District Court then has discretion to adjust the fee award in light of more subjective factors, such as the risk of the litigation, the complexity of the issues, and the skill of the attorneys." *Retarded Children, supra*, 711 F.2d at 1140.

Using the lodestar approach—hours spent on case times hourly rate—, this court must decide whether or not the hourly rate of Wolf Popper is a reasonable one.

### Reasonable Hourly Rates

This case has spanned from its commencement on March 23, 1977 to the submission of the Stipulation of Settlement to this court on April 4, 1985, to the present application by plaintiffs' counsel for an allowance of attorneys' fees. Such protracted litigation raises the question of the use of historic versus current rates in determining the lodestar.

The Second Circuit noted that

In ordinary cases resolved in a year or two, it will make little difference whether historic rates or current rates are applied: price levels at the time of the award will vary only slightly from those prevailing when the litigation was underway. But, with complex institutional litigation that can last for many years, the difference may be great.

*Retarded Children, supra*, 711 F.2d at 1152.

One solution to avoiding windfall caused by fee inflation is "to divide the litigation into two phases and use one rate for the early phase and a current rate for the later phase." *Id.* at 1153. Wolf Popper's own lodestar calculation complies with the *Re-*

*tarded Children* court's suggestion. The court notes that its lodestar value is computed at the firm's current rates from January 1, 1982 to the present, and at historic rates for time prior to December 31, 1981.

The next question, then, is whether or not the rates—present or historic—are reasonable "prevailing market rates." *Miele v. New York State Teamsters Conference Pension & Retirement Fund*, 831 F.2d 407, 409 (2d Cir.1987). *See also Blum v. Stenson*, 465 U.S. 886, 896 n. 11, 104 S.Ct. 1541, 1547 n. 11, 79 L.Ed.2d 891 (1984) (reasonable rate should be "in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation.").

The Supreme Court stated that the burden rests on the fee applicant to produce sufficient evidence—"in addition to the attorney's own affidavits"—that the requested rates conform to the prevailing market rate. *Id.* *See also Miele, supra*, 831 F.2d at 408. Aside from the Keisman affidavit setting forth various attorneys' hourly rates, Wolf Popper has not produced any other evidence for its suggested rates.

However, the court notes first, that defendant has not objected to any part of Wolf Popper's attorneys' fees request. Moreover, the Second Circuit has explicitly rejected the contention, embraced in other circuits, that "a district judge may not rely on the judge's own knowledge of private firm hourly rates in the community and instead must consider only the hourly rate data submitted into evidence." *Miele, supra*, 831 F.2d at 409. This court therefore deems that it has "discretion to rely ... on [its] knowledge of New York City rates ... charged by comparable lawyers at the private bar." *Id.* Plaintiffs' counsel's affidavit describing the lawyers' educational and professional background have lent the court some aid in this task. In the instant case, the rate ranging from $200–250 per hour for a partner is a reasonable rate in light of the complexity of the case and of the firm's background and experience in this area of litigation.[1]

---

1. In determining that counsel's hourly rate is reasonable, the court also relies on established

Based solely on considerations of time spent and hourly rate—with appropriate provisions for historic and current rate adjustments—the initial lodestar value yielding a base amount of $986,711.13, constitutes reasonable compensation.

*Reasonable Fees*

 Following the two-step lodestar approach embraced in *City of Detroit v. Grinnell Corp. (Grinnell II)*, 560 F.2d 1093, 1098 (2d Cir.1977), the court now proceeds to evaluate other factors deemed relevant in determining the final fee amount. The court has discretion to adjust the lodestar base rate, but in so doing, it should "set forth as specifically as possible the facts that support [its] conclusion." *City of Detroit v. Grinnell Corp., (Grinnell I)*, 495 F.2d 448, 473 (2d Cir.1974).

In this case, plaintiffs' attorneys have requested a fee of $1,800,000 representing 1.8 times the lodestar value of their services. No multiplier is sought for the paralegals' lodestar sum. This court, for reasons discussed below, finds that such an increase from the base amount to be a reasonable adjustment. *See e.g. Lindy Bros. Builders, Inc. of Philadelphia v. American Radiator & Standard Sanitary Corp.*, 382 F.Supp. 999, 1024 (E.D.Pa.1974), *aff'd in part and vacated in part*, 540 F.2d 102 (3rd Cir.1976) (lodestar award doubled). *Factors Used in Adjusting the Lodestar*

The court in *Grinnell I, supra*, 495 F.2d at 471, recognized that a just fee cannot be determined by simply following the mechanical formula of multiplying attorneys' hours by reasonable hourly rates. The Supreme Court in *Hensley v. Eckerhart, supra*, 461 U.S. at 434 n. 9, 103 S.Ct. at 1940 n. 9, suggested that a district court may consider factors set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir.1974) in ascertaining whether or not to adjust the lodestar fee upward or downward. The *Georgia High-*

*way* court's suggested guidlines included, among others, the following:

1) The time and labor required
2) The novelty and difficulty of the questions
3) The skill requisite to perform the legal service properly
4) The customary fee
5) Whether the fee is fixed or contingent
6) The amount involved and the results obtained
7) The experience, reputation, and ability of the attorneys.

*See also Blum v. Stenson, supra*, 465 U.S. at 901, 104 S.Ct. at 1550 (complexity of litigation, novelty of issues, beneift to the class, quality of work).

This action was instituted in 1977. Considerable time and effort have been expended in pursuit of plaintiffs' claims. Plaintiffs' lawyers have persevered through extensive pre-trial discovery, investigation, class certification, appeal to the Court of Appeals for the Second Circuit resulting in the landmark decision of *Ross v. Robins*, 607 F.2d 545 (2d Cir.1979), opposition to defendant's petition for *certiorari* in the United States Supreme Court, etc. The case also involves highly complex and novel issues of law: for example, the question of the continued utility of the traditional Rule 10b–5 shareholder class remedy in cases where remedies under Section 18 of the Exchange Act are also available. *See, e.g. In re Brown Co. Sec. Litig.*, 355 F.Supp. 574, 592 (S.D.N.Y.1973) (complexity of litigation and difficulties encountered); *Rosenfeld v. Black*, 56 F.R.D. 604, 605 (S.D.N.Y.1972) (same); *Paris v. Metropolitan Life Ins. Co.*, 94 F.Supp. 356, 358 (S.D.N.Y.1950) (same).

In all these proceedings, plaintiffs' counsel consistently adhered to a skilled and professional standard of conduct in and out of court. With equal consistency, defense

precedents holding that "[t]he reasonableness of an hourly rate may be determined by examining awards made in comparable cases." *Williamsburg Fair Housing Comm. v. Ross Rodney Housing Corp.*, 599 F.Supp. 509, 516 n. 6 (S.D.N.Y. 1984) (1977 rates of $75–$140 per hour); *see also Huertas v. East River Housing Corp.*, 662

F.Supp. 282 (S.D.N.Y.1986) (Carter, J.), at 286, *vacated and remanded*, 813 F.2d 580 (2d Cir. 1987) (Judge Carter found hourly rate to be at least $225 by 1985; Judge Carter on remand, reaffirmed his award of attorney's fees in accordance with his opinion of February 28, 1986, 674 F.Supp. 440, 456 (S.D.N.Y.1987)).

**688**

counsel has acted with similar expertise and dedication in defense of their client. *Paris v. Metropolitan, supra,* 94 F.Supp. at 358 (high standing of petitioner's counsel and opposing counsel); *Jones v. National Distillers & Chem. Corp.,* CCH Fed.Sec.L. Rep. SS 97,288 at 97,014 (S.D.N.Y.1980) (high quality of counsel's work).

A significant factor in the court's analysis is the contingency factor in the present case. The possibility of no recovery or of a small recovery loomed through trial and protracted appellate litigation. Counsel's compensation was wholly contingent on achieving a verdict in their clients' favor or in obtaining a settlement. From 1977 until the present, plaintiffs' attorneys spent many hours and incurred significant costs in pursuit of this action. Courts have widely recognized that "the fact that petitioner's compensation was contingent upon recovery must be taken into account." *Paris v. Metropolitan, supra,* 94 F.Supp. at 358; *Grinnell I, supra,* 495 F.2d at 470 ("No one expects a lawyer whose compensation is contingent upon his success to charge, when successful, as little as he would charge a client who in advance had agreed to pay for his services, regardless of success.") (quoting *Cherner v. Transitron Electronic Corp.,* 221 F.Supp. 55, 61 (D.Mass.1963)); *see also In re Brown Co., supra,* 355 F.Supp. at 592 (same).

Finally, the benefits obtained in this action—the settlement fund of $6,900,000 is a substantial one considering the risks involved. The requested attorneys' fee of $1,800,000 constitutes 26.1% of the settlement fund. The court finds that this percentage of recovery is one within the range allowed in comparable cases. *See Jones v. National Distillers, supra,* CCH Fed.Sec. L.Rep. at 97,014 (fee which was 25% of settlement fund was reasonable); *see also Rosenfeld v. Black, supra,* 56 F.R.D. at 605 ("[t]raditionally, courts in this district and elsewhere have awarded fees in the range of 20% to 30% of the recovery.").

CONCLUSION

The application for attorneys' fees for $1,800,000 and for reimbursement of expenses of $255,307.44 is reasonable as plaintiffs' counsel have represented and is approved in full. Defendant has not opposed this request, and moreover, plaintiffs' counsel has fully complied with the Order of this Court of April 4, 1985 providing for a hearing held on June 14, 1985 to consider counsel's application for attorneys' fees. Notice was sent to members of the Class in accordance with the court's order to inform them of plaintiffs' counsel's intent to apply for attorneys' fees. No class member has objected to the request for attorneys' fees. For the reasons set forth above, the application for attorneys' fees and reimbursement of expenses is hereby granted.