**NEW YORK HOTEL AND MOTEL TRADES COUNCIL, AFL–CIO, et al., Plaintiffs,**

**v.**

**HOTEL ASSOCIATION OF NEW YORK CITY, INC., et al., Defendants.**

**Nos. 85 Civ. 0216, 85 Civ. 0222, 85 Civ. 0223, 85 Civ. 0225–85 Civ. 0231, 85 Civ. 1020 and 85 Civ. 9925.**

United States District Court, S.D. New York.

Oct. 4, 1990.

Solomon & Rosenbaum, Dreschler & Leff, New York City, David Rothfeld, Robert M. Schanzer, Stephen Steinbrecher, for defendants.

Seyfarth, Shaw, Fairweather & Geraldson, New York City, Eric Rosenfeld, Jane B. Stewart, of counsel, for defendants.

Proskauer, Rose, Goetz & Mendelsohn, New York City, Bettina Plevan, Bernard Plum, Andrew P. Marks, of counsel, for defendant Marriott Corp.

Shea & Gould, New York City (Vincent Pitta, Newman & Newell, Washington, D.C. Herbert Semmel, Winn Newman, of counsel) for plaintiffs.

EDELSTEIN, District Judge:

Defendant Marriott Essex House objects to a settlement reached by the parties in the above-captioned consolidated class actions. For reasons to be discussed, defendant Marriott Essex House's objections to the settlement are denied in all respects. The Court adopts the settlement with respect to all the above captioned lawsuits as set out in the stipulation of settlement dated July 11, 1990.

## I. Background

On January 9, 1985, plaintiff New York Hotel and Motel Trades Council, AFL-CIO (the "union") brought all the instant consolidated class actions except 85 Civ. 9925 on behalf of its members against defendants Hotel Association of New York City (the "association") and certain member hotels: the Dorset Hotel, New York Helmsley Hotel, Helmsley Palace Hotel, Essex House Hotel or Marriott's Essex House Hotel (the "Essex House"), New York Hilton Hotel, Helmsley Park Lane Hotel, Sheraton Centre Hotel, St. Moritz Hotel, St. Regis Hotel, Waldorf-Astoria Hotel, and the Helmsley Windsor Hotel (the "hotels") alleging violations of the Equal Pay Act, 29 U.S.C. § 206(d). Plaintiffs filed separate suits against each listed hotel. The firms of Solomon & Rosenbaum, Dreschler & Leff, and Seyfarth, Shaw, Fairweather & Geraldson represented all of the defendants ("defendants' counsel").

On December 18, 1985, plaintiffs instituted the class action lawsuit 85 Civ. 9925 against the association and all the hotels alleging violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-5 by virtue of the greater compensation paid housekeeping attendants. On September 10, 1986, this Court approved the stipulation of class certification for all the suits. In sum, the suits sought (1) to equalize the pay rate between housekeeping attendants and day or night room and bath attendants, (2) back pay, (3) a permanent injunction enjoining the hotels from requiring room attendants to clean up to three additional rooms per week above pre-established quotas without compensation, and (4) attorney's fees.

After years of litigation, possible settlement of the instant suits arose in connection with extending the then-existing industry-wide collective bargaining agreement between the union and the association on behalf of its member hotels (the "existing collective bargaining agreement"). The existing collective bargaining agreement, entered into on June 28, 1985, was due to expire on June 26, 1990, and the union sought an early opening of the new contract negotiations. At a meeting held on September 26, 1989, the association informed the union that settlement of the instant suits was a condition precedent to any such contract negotiations.

After negotiations during the fall and winter of 1989, the parties agreed on an extension and modification of the existing collective bargaining agreement (the "extended collective bargaining agreement"). The provisions of the extended collective bargaining agreement were detailed in a memorandum of understanding between the association and the union, executed on January 30, 1990 (the "memorandum of understanding"). Among its other provisions, the memorandum of understanding incorporated the terms of settlement of the instant actions. These terms are in substance and effect the settlement presented to this Court, which provide (1) that all employees supervised by the housekeeping department whose base wage is the same as the housekeeping attendants shall continue at that equal base wage rate; (2) that effective August 1, 1990, the base wage rates of night room attendants and bath attendants shall be the same base wage rate as housekeeping attendants; (3) that effective August 1, 1990, room attendants shall no longer be assigned to make up extra rooms above pre-established quotas without being compensated at specified extra room rates. The settlement does not award back pay to the class; rather, all its terms are prospective. The parties further agreed to pay their own attorney's fees.

On November 12, 1985, Marriott Corporation ("Marriott") sold the Essex House to

Hotel Nikko of New York, Inc. ("Nikko"). On December 31, 1989, Nikko closed Essex House for renovations and withdrew from the association. As a result, a dispute arose between the union and the association as to whether Essex House would be covered by the settlement set out in the memorandum of understanding.

The gist of this disagreement was that since Essex House was no longer a member of the association and would not sign the collective bargaining agreement, Essex House was not legally bound to adhere to the prospective terms of the settlement. Marriott and the association argued that Essex House was covered by the settlement; the union disagreed.

On March 28, 1990, parties submitted this dispute over the status of the settlement with respect to Essex House to arbitration. At the arbitration hearing held on May 3, 1990, defendants' counsel represented the association, and Marriott was also represented by separate counsel, Proskauer, Rose, Goetz & Mendelsohn. The association and Marriott's positions were both the same. The arbitrator's decision indicates that defendants' counsel argued that the memorandum of understanding contemplated settlement of all of the litigation, including the actions involving Essex House. On May 10, 1990, the arbitrator ruled that the settlement as set out in the memorandum of understanding did not cover the Essex House.

The arbitrator reasoned that the settlement specified in the memorandum of understanding provided for prospective relief incorporated into the extended collective bargaining agreement. The extended collective bargaining agreement would bind its signatories to the terms of the settlement. The plaintiffs agreed to settle these actions and forego their claims for back pay and attorney's fees in exchange for wage and job classification concessions made explicitly enforceable by a collective bargaining agreement. But because Essex House was not a signatory to the extended collective bargaining agreement, it was not bound to honor the prospective relief. As a result, the arbitrator reasoned that Essex

House gave no consideration to the union for the settlement and was not covered by the memorandum of understanding.

After the arbitrator's decision, the parties petitioned this Court to approve the settlement, even without Essex House. This Court scheduled a hearing for July 19, 1990, pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, to (1) consider the terms of the proposed settlement, (2) discuss the sufficiency of the notice provisions to the plaintiff classes, and (3) set a date for hearing objections to the settlement. Fifteen minutes before the 3:00 p.m. hearing time, this Court received a letter from new counsel for Marriott, Proskauer, Rose, Goetz & Mendelsohn, by signature of Bettina Plevan, objecting to the settlement (the "Marriott letter"). The Marriott letter indicated that Marriott had retained the Proskauer firm just days before to represent Marriott in connection with the proceedings regarding the settlement before this Court. The basis of Marriott's objection was that defendants' counsel pursued the settlement even though it excluded Marriott, which it had represented up until Marriott retained the Proskauer firm. As a result, Marriott alleged that defendants' counsel had been in a conflict of interest with respect to the settlement. Marriott asked the Court not to approve the settlement, and for time to investigate their conflict of interest allegation.

At the July 19, 1990 hearing, the Court heard argument and colloquy on Marriott's allegations. Marriott represented that it only objected to its exclusion from the settlement, not to its terms. Marriott conceded they would settle on the exact same terms, except that since they no longer owned the Essex House, they could not sign the extended collective bargaining agreement. Nikko, the current owner of Essex House, refused to sign the collective bargaining agreement. The Court recessed the hearing until the next day for counsel to discuss settlement of Marriott's claims.

At the hearing held July 20, 1990, the Court determined that the Marriott letter provided an insufficient basis to proceed

with an investigation of the charges against defendants' counsel. The Court then considered the notice provision, and ordered that publication of the settlement be expanded from the union trade paper to also include two weeks of daily publication in the New York *Daily News* and *El Diario*. Further, the Court set September 10, 1990 as the final hearing date for objections to the settlement. In connection with the September 10, 1990 hearing, the Court received only one set of objections, from Marriott.

## II. Discussion

### A. Settlement of the Actions

■■■■ In approving this settlement of these class actions, this Court should determine whether the settlement is "fair, reasonable, and adequate." *Ross v. A.H. Robbins Co., Inc.*, 700 F.Supp. 682, 683 (S.D.N.Y.1988); *Weinberger v. Kendrick*, 698 F.2d 61, 73 (2d Cir.1982), *cert. denied*, 464 U.S. 818, 104 S.Ct. 77, 78 L.Ed.2d 89 (1983); Wright, Miller & Kane, *Federal Practice and Procedure: Civil* 2d § 1797.1 at 378. In this circuit, a presumption in favor of settlement exists where (1) the settlement was reached after arms-length negotiations; (2) the proponents are counsel experienced in similar cases; (3) there has been sufficient discovery to enable counsel to act intelligently; and (4) the number of objectants or their relative interest is small. *Ross v. A.H. Robbins, supra,* 700 F.Supp. at 683; *Munsey Trust v. Sycor, Inc.,* 457 F.Supp. 924, 926 (S.D.N.Y.1978); *see Weinberger v. Kendrick, supra,* 698 F.2d at 73–74. In applying these criteria, this Court will first and foremost consider the interests of the absentee class members. *See State of West Virginia v. Chas. Pfizer & Co.,* 440 F.2d 1079, 1085 (2d Cir.1971); Wright, Miller & Kane, *Federal Practice and Procedure: Civil* 2d § 1797.1 at 392–93; 3B *Moore's Federal Practice* ¶ 23.80[4] at 23–487.

■■■■ In this instance, the plaintiffs and settling defendants have met the burden of sustaining this presumption in favor of the settlement. First, this settlement was consummated after five years of litigation as a part of contract negotiations for a new collective bargaining agreement. The collective bargaining agreement negotiations were themselves "arms-length" negotiations, evidenced by the months of negotiations undertaken to extend the existing collective bargaining agreement. It undoubtedly follows that the subsumed settlement negotiations were conducted at arms-length. Second, counsel for plaintiffs and defendants are experienced labor lawyers who have represented their respective parties for years. Third, these cases have been litigated for many years, and have undergone extensive discovery and much legal maneuvering. Finally, not one single plaintiff in any of the classes objected to a single term of this settlement. That no plaintiff out of the several thousand involved in these suits objected to the terms of this settlement is a testimony to its fairness and sufficiency. As stated earlier, it is their rights that are the primary concern of this Court in evaluating this settlement.

As stated earlier, only one set of objections was received, namely, those from defendant Marriott Essex House.

### B. Marriott's Objections

■■■ Defendant Marriott objects to the proposed settlement on two grounds; (1) that the notice was insufficient, and (2) that defendants' counsel was in a conflict of interest by pursuing the settlement even though it did not include Marriott. Both of these objections are without merit and must be dismissed.

#### 1. Notice

This Court squarely considered the content of the notice and the extent of its publication before approval. The transcript of the July 20, 1990 hearing reveals that form of the notice and extent of its publication were discussed extensively. The Court only approved the notice after expanding the publication to include two weeks of daily publication in the New York *Daily News* and *El Diario*. At that time, the Court explicitly determined that the notice form and its expanded publication

were sufficient to inform the class members of the settlement and its terms. Further, it is utterly disingenuous for Marriott to raise insufficiency of notice at this late time. Counsel for Marriott received the proposed notice of settlement in advance of the hearings held July 19 and 20, 1990. Marriott at that time did not raise any objection to the proposed notice form, even though they had every opportunity to voice their concerns.

### 2. Conflict of Interest

Marriott's conflict of interest objection can only be considered if it meets two threshold requirements. First, as a non-settling defendant, Marriott only has standing to object if it demonstrates that they will suffer "formal" or "plain legal prejudice" as a result of this settlement.[1] *Waller v. Financial Corporation of America*, 828 F.2d 579, 583 (9th Cir.1987); *Quad/Graphics, Inc. v. Fass*, 724 F.2d 1230, 1232 (7th Cir.1983); *In Re Corrugated Container Antitrust Litigation*, 643 F.2d 195, 209 (5th Cir.1981); Wright, Miller & Kane, *Federal Practice and Procedure: Civil* 2d § 1797.1 at 408. Second, Marriott's conflict of interest allegation can only be a valid objection if the settlement terms were negotiated while any potential conflict existed. *In re Corrugated Contained Antitrust Litigation, supra*, 643 F.2d at 208. Since Marriott cannot meet either part of this test, its objection must be dismissed.

First, Marriott argues that it stands to suffer formal legal prejudice because settlement of the other suits puts Marriott at a disadvantage with respect to its own settlement discussions with the union. Marriott's contention in this regard is at best highly speculative, and of doubtful relevance to the question of formal legal prejudice.

With respect to 85 Civ. 0216, Marriott's legal rights exist independent of the disposition of the other suits or other defendants. The suit against Essex House was brought as a separate action. The class of plaintiffs seeking relief from Marriott is distinct from the settling classes. Whatever financial liability that Marriott may incur after a trial on the merits is independent of the disposition of the other suits. Marriott may still raise every single legal theory in its defense now that it could have without the settlement. Marriott cannot demonstrate that it stands to suffer any legal prejudice at all from the settlement of the other suits.

With respect to 85 Civ. 9925, the dismissal of the other hotels and the association similarly does not prejudice Marriott's legal rights. The Essex House was operated as an independent entity, and whatever actions might be proved against it only relate to its own conduct. Essex House's potential liability is also not related to the other defendants.

Second, a review of the sequence of events surrounding this settlement reveals that the alleged conflict, if it existed at all, only arose after determination of the settlement terms. The union and the association opened negotiations on the extension of the collective bargaining agreement in September, 1989. The memorandum of understanding setting out the terms of the settlement was executed on January 30, 1990. During the settlement negotiations, defendants' counsel represented all of the defendants and executed the agreement on behalf of all of the defendants. When the dispute arose over whether Essex House was included in the settlement, defendants' counsel maintained that Essex House was, and argued on behalf of Essex House at the arbitration hearing.

Up until the May 10, 1990 decision of the arbitrator holding that Essex House was

---

**1.** There is substantial authority to support the association and the union's proposition that Marriott *per se* has no standing to object to this settlement at all. First, the association argues that Marriott is not even a party to the settlement since these suits are separate actions later consolidated. Second, some courts have held

that non-settling defendants *per se* do not have standing to have their objections considered. *See, e.g., In re Fine Paper Litigation State of Washington*, 632 F.2d 1081, 1087 (3d Cir., 1980); *Wainright v. Kraftco*, 53 F.R.D. 78, 81 (N.D.Ga. 1971). This Court need not reach these arguments in determining these matters.

not included in the settlement, Marriott's interests and the interests of the other defendants were one and the same. By Marriott's own logic, the potential conflict only arose after May 10, 1990, when the other ten defendants decided to pursue the settlement without Marriott. But this divergence of interests occurred over three months after the final terms of the settlement were memorialized into the memorandum of understanding. Given this sequence of events, it was impossible for the settlement negotiations to have been tainted by any conflict. Indeed, the record shows that the association and defendants' counsel fought vigorously for Marriott's rights.

In sum, it is most revealing that neither Marriott nor any other party to this entire litigation objects to the terms of the settlement. After considering the terms set out in the stipulation of settlement, the arguments of counsel, and that no objections from the classes has been received, this Court finds the settlement fair, adequate and reasonable under the circumstances, and should be approved.

### III. Conclusion

The Court hereby approves the settlement of the above-captioned as set out in the stipulation of settlement dated July 11, 1990. For the reasons discussed, Marriott's objections to the settlement of the above captioned cases are hereby denied in all respects. Contemporaneous with this order, the Court will sign the order of settlement previously submitted to the Court as exhibit D to the stipulation of settlement.

So Ordered.