**Stanley FEINGOLD, Plaintiff**

**v.**

**Joseph N. HANKIN, individually, personally, and in his Capacity as President of Westchester Community College, Harry Phillips, III, individually, personally, and in his Capacity as Chairman of the Trustees of Westchester Community College and Thomas S. Carey, personally, and in his Capacity as Chairman of the Trustees of Westchester Community College, and Westchester Community College, Defendants**

**No. 02 CV 4453 (CM).**

United States District Court, S.D. New York.

June 10, 2003.

## MEMORANDUM DECISION AND ORDER

MCMAHON, District Judge.

Plaintiff Stanley Feingold brings causes of action for declaratory judgment and damages based on theories of unjust enrichment and negligent misrepresentation against Westchester Community College (WCC) as well as Joseph N. Hankin, Harry Phillips, III, and Timothy S. Carey, individually and in their capacity as President and Trustees, respectively, of WCC. On May 5, 2003, this Court issued a Memorandum Decision and Order (1) dismissing Plaintiff's claims against the individual Defendants in their individual capacity; (2) finding that Plaintiff had failed to properly serve WCC; and (3) granting Plaintiff an extension of time to effect service on WCC.

On May 19, 2003, Plaintiff properly served WCC. Proof of service or waivers of service as to all Defendants are now on file with the Clerk of the Court. On June 5, 2003, the County Attorney entered an appearance in this case on behalf of Westchester County (the real party in interest to named defendant Westchester Community College) and adopted all arguments previously raised in the motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(1),(2),(5), (6) and (7) filed on November 4, 2003 by the individual defendants.

I now consider Defendants' motion to dismiss. I will not repeat the factual background of this case here; the entire May 5, 2003 memorandum decision and order are incorporated into this opinion.

For the reasons stated below, I grant Defendants' motion to dismiss as to Count IV of Plaintiff's complaint and grant summary judgment in Defendants' favor on the remaining claims, Counts I through III.

## DISCUSSION

Until the current complaint was filed, Plaintiff's predominant concern was obtaining a traditional pension administered by a formal pension system (*see* Notice of Pet. (Article 78 action to compel granting a second pension); *see also* Arcuri Decl. Exs. E, F, and G (various letters expressing concern over and requesting waiver of state law prohibiting double pensions and seeking legislative bill to override law and grant such a pension)). The pleading before me, however, refers more generally to a "series of promises and representations" made by the Defendants for a "salary, benefits and other emoluments in a package such that it would be... desirable for him... [to] accept the position" and such that he "would have the same or nearly the same economic benefits as other WCC professors of substantially similar tenure and experience when they retired." (Compl.¶¶ 8–9) He claims to have relied on this promise when he left his tenured position at City College. Having failed to receive money to recompense him for the loss of a second pension, Professor Feingold alleges that the Defendants made negligent misrepresentations in the form of the above promises and that the negligent misrepresentations were made to entice him away from City College. The complaint seeks declaratory judgment that he is entitled to receive such a pension or the equivalent benefits. (Compl.¶¶ 13–21) And it alleges that Defendants were unjustly enriched to the extent that they have neither made contributions to any pension plan nor paid him equivalent sums.

The Defendants' multi-faceted motion to dismiss asserts, variously, that this Court lacks subject matter jurisdiction, personal jurisdiction over WCC, and personal jurisdiction over the individual Defendants in their official capacities; that Plaintiff failed to join an indispensable party; that the alleged "agreement" is invalid under the Statute of Frauds; and that Plaintiff's causes of action are both legally insufficient and time barred by the statute of limitations. (Mot. To Dismiss ¶ 2; *see generally* Defs.' Mem.) In the May 5 decision, I considered Defendants' jurisdictional arguments. I dismissed Plaintiff's claims against the individual Defendants in their individual capacity, found that Plaintiff had failed to properly serve WCC, and granted Plaintiff an extension of time to effect service on WCC.

Both sides having elected to submit extra material in connection with the motion, I accepted their implicit invitation to convert the motion to dismiss to a motion for summary judgment on the Plaintiff's contract-based claims. Fed.R.Civ.P. 12(b); *Chambers v. Time Warner Inc.*, 282 F.3d 147 (2d Cir.2002); *Cortec Indus. Inc. v.*

*Sum Holding, L.P.*, 949 F.2d 42 (2d Cir. 1991). On April 28, 2003, I informed the parties that I would be accepting their implicit invitation to convert the motion to one for summary judgment on these counts. At that time, and again on May 6, I asked that Plaintiff direct me to all documents he relied on for the proposition that the parties had an agreement, memorialized in writing, that Plaintiff would receive either a pension, "or its equivalent." Plaintiff responded by arguing that he needed discovery to comply with this request. On May 8, 2003, I directed WCC to produce, within five days of receiving service of process, any and all documents in its files relating to Professor Feingold's employment contract. On June 2, 2003, Plaintiff provided the Court with twenty documents, selected from those produced by WCC, that purportedly demonstrate that an agreement regarding pension alternatives was memorialized. In deference to the April 28 order, Plaintiff simply submitted the documents, without presenting any arguments.

In addition, as permitted by Gen. Oblig. L. § 5–701(3)(c), I have examined the contents of Defendants' Motion to Dismiss and Memorandum in Support of that motion to see whether Defendants admit the existence of the alleged "in lieu of pension" agreement in any statement made to this Court. They do not.

I. Defendants Are Entitled to Summary Judgment on Counts I Through III, Which Seek Relief for Breach of Contract, Because The Alleged Contract Is Barred by the Statute of Frauds

Count I requests declaratory judgment that as of Professor Feingold's retirement he was due the pension or equivalent that he was allegedly promised. Count II seeks damages estimated of at least $500,000 as the equivalent of the pension or other compensation agreed to. And Count Three alleges that the Defendants' alleged breach of their agreement leaves them unjustly enriched by at least $500,000. Plaintiff, in his reply to the Motion to Dismiss, asserts that these causes of action generally sound in contract.

Defendants argue that the first three counts should be dismissed pursuant to New York General Obligations Law (N.Y.Gen.Oblig.Law), which provides that an agreement which by its terms will not be performed within one year is void unless reduced to writing subscribed by the party to be charged therewith. N.Y. Gen. Oblig. Law § 5–701(a)(1).

Plaintiff responds that the agreement is taken out of the statute by N.Y. Gen. Oblig. Law §§ 5–701(3)(c) and (d), which provide that such a contract is nonetheless enforceable if: "(c) the party against whom enforcement is sought admits in its pleading, testimony, or otherwise in court that the contract was made; or (d) there is a note, memorandum or other writing sufficient to indicate that a contract has been made, signed by the party against whom enforcement is sought ..." Under settled New York law, such writing or writings must collectively establish all the essential terms of the agreement. *Zaitsev v. Salomon Bros.*, 60 F.3d 1001 (2d Cir., 1995); *Great Destinations v. Transportes Aereos Portugueses*, 460 F.Supp. 1160 (S.D.N.Y. 1978); *Crabtree v. Elizabeth Arden Sales Corp.*, 305 N.Y. 48, 110 N.E.2d 551 (1953); *Bykofsky v. Hess*, 107 A.D.2d 779, 484 N.Y.S.2d 839 (2d Dep't 1985); *compare Merschrod v. Cornell Univ.*, 139 A.D.2d 802, 527 N.Y.S.2d 109 (3d Dep't 1988) (various writings viewed together established all essential terms of the agreement including identity of the parties, salary and terms of employment.) Plaintiff claims

that the various letters executed by the parties satisfy the "signed writings" requirement of § 5–701(3)(d), and that Dr. Hankin's 1997 letter to the Chancellor of the State University system, as well as their Memorandum of Law, contain admissions that the contract under which he seeks to recover was made.

The first thing to note is what contract we are talking about. It is not possible for Plaintiff to allege that he has a contract entitling him to a traditional pension through the New York State Pension System, because no such contract would be enforceable. By electing to collect his City College pension while working at WCC, Plaintiff put himself in a position where he was barred by law from contributing to another public employee pension plan.[1] So even if WCC offered Plaintiff a job on terms that included a traditional pension and Plaintiff accepted employment on those terms—thereby creating a contract—that agreement would be void and unenforceable to the extent it referenced participation in the pension plan.

So Plaintiff alleges instead that someone acting on behalf of WCC promised him either a pension *or benefits equivalent to those he would have received had he been able to contribute to a second public employees' pension plan.* He claims this agreement is memorialized in a series of writings, some of which are attached to Defendants' motion to dismiss and one of which is attached to Plaintiff's response to that motion.

The record originally submitted to me included four "writings" that, according to plaintiff, collectively memorialize WCC's agreement to give him benefits in lieu of a

pension if he could not collect a pension. They are as follows:

(1) A letter dated September 1, 1983 from Professor Feingold to Dr. Hankin. Plaintiff wrote this letter after receiving a pension check from his City College pension plan. The check contained a legend stating that by endorsing it, the payee acknowledges that he is not receiving compensation from the State of New York. In this letter, Professor Feingold does not mention the State's prohibition on collecting a second pension. Indeed, he does not mention the Defendants' alleged promise of a second pension at all. The sole concern evidenced in this letter is that collecting his City College pension might bar him from being employed by WCC. He writes: "I cannot tell you how distressed I am. I want very much to continue working at Westchester Community College ... I will not permit this threat to my employment to affect my present efforts." (Mot. To Dismiss Ex. E.)

(2) A letter from Professor Feingold to Dr. Hankin dated February 14, 1997. It incorporates "the complete text of a letter I have addressed to Westchester members of the New York State Legislature" seeking a private bill in the Legislature to grant him a pension. Professor Feingold wrote that his coming to WCC was predicated on "the explicit understanding that I would be eligible for a pension for my service at WCC in one of the several available pension systems" and "a good faith agreement that included a pension for my services at the college...." (*Id.* Ex. F).

(3) A letter from Dr. Hankin, dated September 17, 1997, to Chancellor Ryan of the State University of New York. This

---

**1.** It is only fair to note that plaintiff could have accrued a second state pension while working at WCC by deferring his collection of the City College pension until he really did retire. I understand that this was not the arrangement plaintiff had in mind when he did his financial planning back in 1982, but it was indeed his choice not to accrue a second pension.

letter, written at the request of Professor Feingold, supports his request for "a waiver of the relevant provisions of the New York Code, Sections 210 and 213 of Article 7, to allow the granting of a pension to Stanley Feingold for his sixteen years of service on the faculty of Westchester Community College ..." (Plaintiff's Mem. in Opp. to the Motion to Dismiss, Ex. A) In his letter—which is for all intents and purposes identical to the letter plaintiff had written to the Legislature some months earlier—Dr. Hankin states, "Professor Feingold retired from City College, began to receive his TRS pension, and accepted the appointment at Westchester Community College with the explicit understanding shared by both him and the college that he would be eligible for a pension for his service at WCC in one of the several available pension systems." (*Id.*) Dr. Hankin goes on to say, "I, as President of Westchester Community College, and our Board of Trustees, had entered into a good faith agreement that included a pension for his services at the college." (*Id.* at 2) The letter sets forth Professor Feingold's outstanding credentials, and concludes by saying "Professor Feingold deserves a pension for sixteen years of service at Westchester Community College because he has served the college faithfully and well and because we would not have had the benefit of his service in the absence of our mutual understanding that he would receive a pension." (*Id.* at 3)

(4) Various Form UP–211 waivers executed by Dr. Hankin and WCC, acknowledging their employment of a retired public employee, stating his annual salary, and indicating the TRS plan from which Professor Feingold was currently drawing payments.

Plaintiff's argument that these writings save his contract claims from the Statute of Frauds is unpersuasive. The writings he cites at most establish an explicit understanding that Plaintiff would be eligible for a pension for his service at WCC and that he would receive one by participating in one of the "several available pensions systems." The documents collectively say not one word about any obligation on WCC's part to provide Professor Feingold with equivalent compensation should that assumption prove false. Terms concerning the alleged equivalent compensation, which are nothing short of essential, are conspicuously absent from any writing.

The first letter, as noted, makes no mention whatever of the "double dip" pension that Professor Feingold obviously expected to accrue while collecting his first pension.

The second and third letters—one of which bears Dr. Hankin's signature, though its text was adapted from Professor Feingold's earlier letter—are virtually identical. They state that both parties entered into a contract of employment in the mistaken belief that Professor Feingold would be eligible to accrue a second pension through one of the "several available pension systems" while collecting the first. Why either side should have been under any misapprehension on that score escapes me; the law forbidding such an arrangement had long been on the books, and the prohibition was absolutely clear. However, I accept the proposition that both sides made a serious and inexcusable mistake by agreeing to something that was patently illegal.

What does that mean? It means the agreement the parties actually made could not be enforced. Plaintiff acquired no rights by virtue of the illegal agreement and Defendants assumed no obligations thereunder. It does not mean that the parties made a wholly different agreement, one that obligated WCC to make up for

anything that Professor Feingold was barred by law from collecting. Nothing in either letter—and especially nothing in Dr. Hankin's September 1997 letter, which is the only relevant document signed by the party to be charged—evidences the existence of any such alternative agreement. It is both unimaginable and illogical that the parties could have agreed on an alternative to a state-funded pension when they originally set the terms of Professor Feingold's employment, because everyone agrees that neither side thought there would be any need for a fall-back plan.[2] And Plaintiff does not allege that Defendants, having learned that the original plan would not work, entered into an amended agreement with him. Certainly nothing in Dr. Hankin's letter supporting plaintiff's request for a waiver suggests that such an amendment was made. Fairly read, Dr. Hankin's letter argues only that plaintiff ought to be allowed to collect a second state pension, notwithstanding the usual rule, because both parties were under a mistaken impression when they entered into their employment relationship. It says nothing more. And since ignorance of the law is no excuse, it should not be surprising that the argument did not work.

Defendants' only acknowledgment of any promise of a pension is made by reference to the Notice of Petition from Plaintiff's previous, short-lived Article 78 proceeding and Dr. Hankin's letter. Those documents refer only to a formal pension through a pension plan, not a promise for an equivalent benefit in lieu of pension. Neither do they acknowledge the "series of promises and representations" for "benefits and other emoluments" in a package that would put him on a par with other retired WCC professors to which Plaintiff refers in his complaint.

Among the twenty documents submitted by Plaintiff are additional copies of the four letters discussed above. Most of the other documents are very similar to these four letters; they are essentially letters written by or on behalf of Plaintiff arguing that it would be unjust to deprive Plaintiff *of the pension* which he had been promised by WCC.

The only documents provide by Plaintiff which refer to an alternative to a pension are a letter from Plaintiff to Dr. Hankin and a letter from Plaintiff to the Director of the Personnel Office, Sabrina Johnson–Chandler. In his letter to Dr. Hankin, written on July 26, 1999, Plaintiff states that he is submitting his resignation from the faculty of WCC effective September 1, 1999 "without prejudice as to my claims for pension and retirement benefits or equivalent compensating benefits." In his letter to Ms. Johnson–Chandler, written on September 17, 1999, Plaintiff informs the Personnel Office that he has retired from WCC effective September 1, 1999, and states that "[o]n the advice of counsel, I must add that this retirement is without prejudice to my claim for a pension or

---

**2.** The only agreement evidenced in Dr. Hankin's letter is the one made at the time of plaintiff's hiring—i.e., the agreement that was in existence *before the parties learned that New York State law forbade what plaintiff was trying to do*. Thus, the letter states: "After two years at WCC, he and we were informed that he was ineligible to receive a second pension from the state. I, as President of Westchester Community College, and our Board of Trustees, *had entered* into a good faith agreement that included a pension for his services at the college." (Plaintiff's Ex. A at 1–2) The only way to read those two sentences is that the Board made a deal and two years later learned that the terms offered were beyond their power to give. Interestingly, the letter of agreement Plaintiff and WC signed back in 1983—which was not called to my attention in the original moving papers—does not contain any reference to any sort of pension. *See infra*, p. 11.

other compensation."[3] Neither of these letters—which were written seventeen years after Plaintiff began working at WCC—memorializes an agreement between the parties as to the terms of Plaintiff's employment. Indeed, neither is even signed by WCC, the party to be charged under the purported agreement. Plaintiff cannot invent an "agreement" all by himself.

One of the additional documents, however, does evidence what the parties agreed to at the time plaintiff was hired. This is a letter agreement dated June 22, 1983. The letter offers plaintiff employment at WCC and states the position, salary and leave policy. The letter, signed by Dr. Hankin, invites Plaintiff to accept the appointment by signing and returning the letter. Plaintiff did so on June 24, 1983. The letter makes absolutely no mention of any pension, let alone alternative equivalent alternative benefits.

Thus, the additional documents, like the documents provided with the original motion to dismiss, fail to support plaintiff's position that WCC agreed to pay him an "alternative" pension in lieu of the one barred by state law. Nowhere in the papers filed with this Court do Defendants acknowledge the existence of any "side agreement" for WCC to provide Plaintiff with emoluments in lieu of a pension if he could not accrue a second state pension while collecting a first.

The Statute of Frauds requires that the material terms of the alternative agreement pleaded by Plaintiff be in writing signed by the party to be charged. The writings cited and provided by the Plaintiff do not contain any acknowledgment that WCC promised to pay plaintiff the equivalent of a pension if he could not accrue one in the ordinary course. I therefore grant the motion for summary judgment dismissing Counts I, II and III on ground that the alleged agreement is barred by the Statute of Frauds.

II. Count IV, Sounding in Negligent Misrepresentation, Is Dismissed Because Plaintiff Failed to File a Notice of Claim and Because it is Time Barred

Count IV alleges that Defendants lured plaintiff to WCC by negligently misrepresenting to him that he would be eligible to continue accruing pension benefits while collecting his pension from City College. This claim must be dismissed because plaintiff failed to file a notice of claim against Westchester County.

A claim of negligent misrepresentation sounds in tort. Failure to file a notice of claim against the county within 90 days of the time when the claim against the county arose is grounds for dismissal of a tort cause of action. N.Y. Gen. Mun. Law § 50–e (1)(a); New York County Law § 52; *Carren v. Westchester Community College*, 176 Misc.2d 490, 674 N.Y.S.2d 576 (1998) (case properly dismissed upon failure to comply with state law requiring notice of claim).[4] No such notice was filed by Plaintiff.

---

**3.** An interoffice WCC memorandum, also one of the twenty documents provided by Plaintiff, indicates that Plaintiff changed his "resignation" to a "retirement" because, while Plaintiff was not "retiring" from one of WCC's pension systems, the Benefits Office had determined that he would be seen as "retiring" from Westchester County for the purpose of receiving Retiree Health benefits. This memorandum, dated August 27, 1999 and signed by the Director of the Personnel Office, is entirely irrelevant to whether Plaintiff and WCC agreed as a term of his employment contract in 1983 that he would receive a pension or its equivalent.

**4.** The requirement of a notice of claim pertains only to actions in tort. *Hoydal v. City of New York*, 154 A.D.2d 345, 545 N.Y.S.2d 823

The statute does provide that, upon application, courts may exercise their discretion and extend the time to serve a notice of claim. N.Y. Gen. Mun. Law § 50–e(5). However, there is no evidence in the record that any such application was ever made to the New York State Supreme Court, and district courts in the Southern and Northern Districts of New York have held that Federal Courts do not have the jurisdiction to entertain such applications. *Brown v. Metropolitan Transit Authority,* 717 F.Supp. 257 (S.D.N.Y.1989); *Lipinski v. Skinner,* 700 F.Supp. 637 (N.D.N.Y. 1988).[5] In any event, if I had jurisdiction to grant a waiver, I would not do so; plaintiff has known for almost two decades that any representation that might have been made to him back in 1982 was erroneous.

Plaintiff's tort claim is also barred by the statute of limitations, which is three years from the date the misrepresentations were made. N.Y. C.P.L.R § 114. Any erroneous statements made to plaintiff by WCC officials were made in 1982, and plaintiff has known that the statements were erroneous for at least 18 years, if not longer.

## CONCLUSION

For the above reasons, summary judgment is granted in favor of Defendants on Counts I through III and Count IV is dismissed with prejudice, with costs to the Defendants.

The Clerk of the Court is directed to close the file.

This constitutes the decision and order of the Court.

---

(2d Dep't 1989) (where there was no tort, notice of claim not required). *Gahagan Dredging Corp. v. County of Nassau,* 71 Misc.2d 751, 338 N.Y.S.2d 241 (N.Y.Sup.Ct. 1972) (although County Law § 52 speaks of any claim, the title indicates limitation to a presentation of claims for torts); *Meed v. Nassau Cty. Police Dep't,* 70 Misc.2d 274, 332 N.Y.S.2d 679 (N.Y.Sup.Ct.1972) (statute does not refer to contract or breach of contract so patrolman's action to recover salary and benefits under contract theory required no notice of claim.)

**5.** Prior to January 1, 1979 N.Y. Gen. Mun. Law § 50–e(7) provided that applications could be made in Supreme Court, County Court or if an action … has been commenced, where the action is pending. But the courts have held that the precise wording of the amended statute and legislative history make clear the intent that the venue for applications does not extend to the federal courts. *See Lipinski v. Skinner,* 700 F.Supp. at 639–640.